*IN ERROR.*
······
ALBANY,
April, 1816.

SIMSON
v.
HART.

\* For affirming, 15. For revers-ing, 8.
April 3d.

Judgment of affirmance.

————◆❋◆————

SAMPSON SIMSON, *Appellant.*
*against.*
JOEL HART, *Respondent.*

THE bill of the appellant (who was the plaintiff in the court below) stated, that in *December*, 1813, he obtained a judgment in the mayor's court of the city of *New-York* against the respondent, and one *Ephraim Hart,* for 4,585 dollars and 43 cents damages and costs, for an assault and battery committed by them on the appellant; and that the respondent, at the same term of the same court, but after the judgment of the appellant, obtained a verdict against the appellant for 500 dollars, for an assault alleged to have been committed by the appellant upon the respondent.   That the appellant, having obtained an order from the recorder of *New-York* to stay proceeding in the respondent's suit against him, gave notice to the respondent's attorney, that the judges of the mayor's court would be moved, at the next *January* term, that the proceedings in the cause

Where A. re-covered a judg-ment against B. and C., for an as-sault and batte-ry, and B re-covered a judg-ment against A. for an assault and battery, it was held, B be-ing insolvent, and C. much em-barrassed, that A. was entitled to have the judgment reco-vered by him a-gainst B. and C., applied in satis-faction of, or set-off against, the judgment recovered by B., and might sus-tain a bill in chancery for that purpose.
Where the mayor's court of the city of New-

York had refused to allow a set-off of judgments, *it was held,* that a bill might be sustained in chancery to compel such set-off to be made, especially where new facts, not presented to the court below, were disclosed, notwith-standing the refusal of that court to allow it.

Matters set up in an answer, by way of avoidance, and not necessarily drawn forth by the bill, must, after a general replication, be proved, or the defendant cannot avail himself of them.  And, therefore, he cannot rely upon them on a motion to dissolve an injunction.

A court of law allows set-offs of judgments, *ex gratia ;* but a party applying to a court of equity is entitled to it as a matter of right.

It is not necessary that the judgments should be in the same right ; it is sufficient if the judgment, prayed to be set off, may be enforced at law against the party recovering the judgment to be diminished or satisfied by the set-off: as where a judgment, recovered by A. against B. and C., in trespass, is to be set-off against a judgment reco-vered by B. against A. ; for the whole amount of the judgment may be collected from B., who can have no con-tribution from C.

A decision of a court of law, upon a summary application to its equity, is not such a *res judicata* as to preclude chancery from examining the question ; nor is chancery concluded where a new fact is disclosed which was not presented to the court of law.  Chancery does not interfere in granting new trials.

IN ERROR.
........
ALBANY,
April, 1816.

SIMSON
v.
HART.

wherein a verdict had been given for the respondent, be stayed, upon the appellant undertaking to deduct and allow to the respondent the amount of the damages received by him, and the costs, when they should be taxed, by entering a *remittitur* for the amount of such damages, on the record of the judgment obtained by the appellant, against the respondent and *Ephraim Hart*; which motion was to be supported by an affidavit of the appellant, stating the verdicts and judgments as before mentioned, and setting forth a number of judgments, docketed against the respondent, both in the supreme court and the mayor's court, remaining unsatisfied, in the whole amounting to a large sum; on one of which, for 330 dollars, a *fi. fa.* had been issued, and returned *nulla bona;* and that a like return had been made to an execution against the respondent, on a judgment in a justice's court, for 17 dollars. The bill then stated, that on motion to the mayor's court, the set-off was refused; that all the judgments appearing of record against the respondent, except one, were prior, in time, to that of the appellant, and set forth a number of judgments, to a very large amount, against *Ephraim Hart*, remaining unsatisfied, all of which were prior, in time, to that of the appellant. The bill further stated, that the respondent was confined within the limits of the gaol in the city of *New-York*, on a *ca. sa.*, and prayed that the set-off might be allowed, and that an injunction might issue.

The respondent, in his answer, admitted the two recoveries and judgments mentioned in the bill, and stated, in regard to the suit against the respondent and *Ephraim Hart*, that the appellant assaulted the respondent with great violence; and that *Ephraim Hart*, being present, and being the father of the respondent, struck the appellant in his defence, and denied that the respondent struck at all, or that there was any concert between him and his father; and alleged that the appellant sued him jointly with his father, to prevent his being a witness for his father; and that the respondent's recovery was for an assault and battery committed on him by the appellant, at the same time that the assault and battery was alleged to have been committed by the respondent and his father upon the appellant. The respondent admitted that the suit commenced by him was commenced after the appellant's suit was brought, and that the appellant offered to make the set-off, and applied to the court for that purpose, which application was resisted by the respon-

IN ERROR.
........
ALBANY
April, 1816.
SIMSON
v.
HART.

dent on an affidavit, stating the facts, in substance, as contained in his answer, and was refused by the recorder. He also admitted, that there were judgments against him, as stated in the appellant's bill; for debts justly due, which he was unable to pay; and that he was now on the limits of the gaol in the city of *New-York*; that though there are judgments against his father, as stated in the appellant's bill, yet, that he was informed, and believed, that many of them had been, in great part, paid off; and that he did not believe that his father was insolvent, but, on the contrary, that if his father should be so fortunate as to recover the amount of moneys justly due to him, he would be fully able to pay all his just and legal debts. He also admitted, that he was willing to set-off one judgment against the other, if the appellant would discharge the judgment he held against the respondent and his father altogether; but he alleged, that if he should pay the amount of his own judgment to the appellant, by setting off the same against so much of the appellant's judgment, he could not compel his father to refund to him any part of such payment.

The cause came on to be heard before his honour the chancellor, on a motion to dissolve the injunction, which had been granted on filing the bill, who decided, that the bill could not be sustained, and, accordingly, granted the motion. An appeal having been entered by the plaintiff below, the chancellor now assigned the reasons for his decree, as to which, see 1 *Johns. Ch. Rep.* 93—99.

*Baldwin*, for the appellant. From an examination of the circumstances of this case, it will appear that all the equity lies on the part of the appellant. The *recorder* decided the question upon the ground that the appellant might collect the amount of his judgment from *Ephraim Hart*; but a new fact has since been disclosed, that *Ephraim Hart* was insolvent, and unable to satisfy it. The chancellor rested his decision on the ground that the proceedings before the *recorder* could not be re-examined in another court; but the authorities decisively show, that those proceedings could not oust a court of equity of its jurisdiction. In *Kent* v. *Bridgman*,[*] a perpetual injunction was granted against a defendant who had recovered a verdict at law, on a failure of the defendant at law, in making out the requisite proof, although no other matters of defence were produced than those which

[*] *Prec. in Ch.* 233.

SIMSON·
v.
HART.

**1 Ves. 327.
S. C. 1 Atk. 126.**

were submitted to the jury on the trial. In *Fillon* v. *Hyde*,[*] where the assignees of a bankrupt had recovered at law sums of money paid by the bankrupt to the plaintiff, *bona fide*, after a secret act of bankruptcy, Lord *Hardwicke* sustained a bill to compel the assignees to allow payments made by the plaintiff to the bankrupt, although such allowance was refused at law; for, he said, that the determination of the case at law was not conclusive; that this was a matter of account, and, therefore, though not allowed at law, chancery having jurisdiction of accounts, takes them, notwithstanding the verdict. So, in *Picket* v. *Morris*,[†] a set-off was allowed in equity after a trial at law, in which it had been rejected. The counsel also cited *Ambler* v. *Wyld*, 2 *Wash*. 36. *Taylor* v. *Okey*, 13 *Ves*. 180. *Lechmore* v. *Hawkins*, 2 *Esp. Rep*. 626. *Tuttle* v. *Beebee*, 8 *Johns. Rep*. 152.

**† 2 Wash. Rep.
255.**

*J. V. N. Yates*, for the respondent. Set-offs were not allowed at common law, and it cannot be contended that the set-off in the present case comes within the statute, but the power which courts of law have assumed and exercised in relation to mutual judgments arises from other considerations; it is considered as incidental to the due administration of justice, and as flowing from their right to control their suitors to such a course as is demanded by equity and justice.[‡] Such set-offs, therefore, not being required either by the statute or the common law, are not *ex debito justitiæ*, but rest in the discretion of the court.[§] This course was authorized by the law and practice of the court, and not the law of the land, and, therefore, does not merit the same consideration as questions of right: nor was it admitted without a struggle; for in the earlier cases the set-off was refused.[||] But, when the rule was established, it seems to have been laid under these restrictions: that the judgments should be between the same parties;[**] or, if another person were likewise a party, then that the insolvency of the parties against whom the set-off was made, should be clearly shown, or their having absconded beyond the reach of process: that it would not be allowed where the interest of third persons was involved:[††] and that in every case the lien of the attorney for his costs should be preserved.[‡‡] From these positions, this principle may be deduced, that where the set-off required would make one of the parties a loser, without the possibility of reimbursement from his companion, there equity requires that no

**‡ Mont. Set-off,
6.**

**§ 1 Hen. Bl. Rep.
657. 4 Term
Rep 123. Mont
Set-off, 6. notes.**

**|| Str. 891. 1203.
Bull. N. P 336.
Mont. Set-off, 6.
notes.**

**** 8 Term Rep.
69.**

**†† 3 East's Rep.
149.**

**‡‡ 2 Hen. Bl.
Rep. 588. Mont.
Set-off, 14. 2
Caines' Rep. 105.
3 Johns. Rep. 247.**

set-off should be allowed. In *Doe* v. *Darnton*,* Lord *Ellenborough* expressed a strong disinclination to extend the power of setting off debts, on general grounds of equity, beyond the line which the legislature had thought proper to mark out; and in *Brewster* v. *Harris*,† the supreme court showed a disposition not to allow judgments of different courts to be set-off against each other. Most of the restrictions to the rule which have been mentioned, apply to the present case; the insolvency of the respondent and his father is not clearly made out; it is merely inferred, nor is it expressly admitted. The principle in *Doe* v. *Darnton*,‡ also applies; the interest of a third person will be affected; for the respondent may, with regard to his father, be considered as a third party;§ besides, if the set-off be allowed, the respondent would be a loser; he can have no contribution against his father, but must bear the whole loss himself.‖ The verdict, too, against the respondent was manifestly unjust, as is apparent from the single consideration, that he afterwards succeeded at the trial of the case in which he was plaintiff; and the answer, which must be admitted to be true in all its parts,** further shows the iniquity of it. The appellant committed the first assault; he admitted the respondent to have had no agency in it, and to be wholly innocent; he made the respondent a party merely to exclude his testimony, and more light being elicited on the second trial, a verdict was found for the respondent. To admit a set-off, in such a case, would be contrary to equity and justice.

Although the equitable powers of the mayor's court were correctly exercised in this instance, still, admitting that they were not, it does not follow that the chancellor had jurisdiction. It is not sufficient, says Lord *Redesdale*, in *Bateman* v. *Willoe*,†† to show that injustice has been done, but that it has been done under circumstances which authorize the court to interfere; because, if a matter has already been investigated in a court of justice, according to the common and ordinary rule of investigation, a court of equity cannot take on itself to enter into it again. And again, he says, that he could not find any ground whatever for a court of equity to interfere, because a party had not brought forward evidence which was in his power at the trial. The rule laid down by Lord *Redesdale* reconciles all the conflicting cases, and gives to each court its proper and peculiar functions. It shows that where courts of co-ordinate jurisdiction have passed upon a subject, no other than a superior

*IN ERROR.*

ALBANY,
April, 1816.

SIMSON
v.
HART.

\* 3 *East's Rep.* 149.

† 1 *Johns. Rep.* 144.

‡ 3 *East's Rep.* 149.

§ *Barnes,* 145.
1 *Hen. Bl. Rep.*
23. *Mont. Setoff.* 10, 11. notes.

‖ 8 *Term Rep.* 186.

\*\* *Harr. Ch.* 309.

†† 1 *Sch. & Lefroy,* 201.

*IN ERROR.*
.......
ALBANY,
April, 1816.

SIMSON
v.
HART.

court, on appeal, or writ of error, should reverse it. And this rule reconciles the opinions of Lord *Kenyon*, in *Lechmere v. Hawkins*,[*] and *Hart* v. *Lovelace*,[†] which, otherwise, appear hostile to each other. If a court of law had refused a new trial, a court of equity would not, no new matter being disclosed, proceed to review that decision, although the practice formerly, when courts of law were more illiberal in respect of new trials, was otherwise.[‡] The rule now contended for has been expressly recognized by this court in *Le Guen* v. *Governeur and Kemble* ;[§] in that case, *Radcliff*, J. says. " The general principle, that the judgment or decree of a court possessing competent jurisdiction, shall be final as to the subject matter thereby determined, is conceded on both sides, and can admit of no doubt. The principle, however, extends farther. It is not only final as to the matter determined, but as to every other matter which the parties might litigate in the cause, and which they might have had decided." The various authorities upon the subject are there cited by the judges in their opinions. A court of chancery never relieves against a verdict at law, on the ground of its being contrary to equity, unless the party were ignorant of the fact at the trial, or it could not have been admitted as a defence.[‖] The pleadings show that the appellants sought relief in chancery, on the same matter as was laid before the mayor's court, and not on any additional or new matter, nor under any pretence of mistake or inadvertence. The court of chancery, therefore, had no jurisdiction of the cause ; but if it could have entertained jurisdiction, it was correctly exercised ; for if it were right in the mayor's court to reject the set-off, it was equally right for chancery to do so : or, if the propriety of allowing it were doubtful, it would have been indiscreet for chancery to have interfered ; because it would have been, in fact, a direct reversal of the decision of a competent tribunal ; because it was in a case of mere *tort*, and did not require an adjustment of accounts ; and because the verdict against the respondent was grossly iniquitous.

*T. A. Emmet*, in reply. Courts of equity had a jurisdiction in cases of set-off, antecedent to the statute, and they still exercise the same inherent jurisdiction in cases to which the statute does not apply ;[**] and courts of law, going a little farther than the letter of the statute, by the rule of analogy, have extended it to cases of judgments, not only in the same, but in different courts.[††] It is said, on the opposite side, that such set-offs are

[*] *2 Esp. Rep.* 626.
[†] *6 Term Rep.* 471.
[‡] *3 Bl Com.* 388. *Cas. temp. Talb.* 472.
[§] *1 Johns. Cas.* 436.
[‖] *3 Atk.* 223. *1 Atk.* 293. *Prec. in Ch.* 221. *2 P. Wms* 426. *2 Wash* 272. 275.
[**] *Mont. on Set-off.* 2, 3, 4, 5. *Ves.* 108. *12 Ves* 348.
[††] *Wm. Black. Rep.* 869. *2 H. Black. Rep.* 440.

merely discretionary, and not *ex debito justitiæ ;* but this is not true, unless taken in reference to the court to which the application is made ; it is *discretionary,* as to the court of law, but *ex debito justitiæ* as to the court of chancery. The appellant has no redress, except in chancery ; for the decision of the mayor's court is not subject to an appeal, or writ of error. That court acted, in this instance, as a court of equity ; and, in a summary manner, exercised the powers which belong to the chancellor : courts of common law, in such cases, *ex gratia,* afford the relief which the chancellor is bound to bestow.

IN ERROR.
......
ALBANY,
April, 1816.

SIMSON
v.
HART.

Was the decision of the recorder such a *res judicata,* as to conclude the chancellor from re-examining the question ? In *Yates* v. *The People,** the present chancellor, then chief justice, considers that only as a *res judicata* which would be final, and conclude all other persons. and the same, and all other jurisdictions. If, then, the decision be not final ; if it be not conclusive on the jurisdiction that made it, it can conclude no other ; but the recorder, in this case, was not concluded from annulling his order, and making a new one. If this had been a *res judicata,* it could have been pleaded in bar, but it would have puzzled any lawyer to have introduced this matter into a plea. Every plea, says Lord *Hardwicke,* in *Child* v. *Gibson,*† that is set up as a bar, must be *ad idem :* and he observes, that it is extremely hard to say, that because the plaintiff failed in a former case, that when he had made a new case, and brought a new bill, he should not be allowed to go on, but be barred by a plea of a former decree in the same matter. In *Brewerton* v. *Harris,*‡ the supreme court refused to interfere in making the set-off, on the ground of inconvenience. It has been held, both by Lord *Kenyon,*§ and Lord *Eldon,*‖ that after a set-off has been refused at law, the party may obtain it in equity ; and after unsuccessful applications to the court of king's bench, to set aside an annuity, bills have been sustained in chancery for the same purpose.** The case of *Vaulx* v. *Shelley,*†† shows the power of the court of chancery to set aside verdicts, and other proceedings, in an inferior court, when unjust and inequitable.

* 6 *Johns. Rep.* 431.

† 2 *Atk.* 603

‡ 1 *Johns. Rep.* 144.

§ 2 *Esp. Rep.* 627.

‖ 13 *Ves.* 180.

** 7 *Ves.* 14, 15. 5 *Ves.* 612.

†† *Rep. temp. Finch,* 472.

PLATT, J., (after stating the substance of the bill and answer.) According to the construction which was admitted on the argument, and which seems to me the most fair and obvious, the *gravamen* of the complainant's bill is, not that the mayor's

IN ERROR.
........
ALBANY,
April. 1816.

SIMSON.
v.
HART.

court *refused to take cognizance* of his application for set-off; but that it *decided wrong* upon the merits of that application.

There is no doubt that the equity powers of the mayor's court, and of the court of chancery, are so far concurrent on this subject, as that either was completely competent to afford the relief prayed for in this bill. (*Barker* v. *Braham*, 2 *Bl. Rep.* 869. *Montague on Set-off*, 6. *Mitchell* v. *Oldfield*, 4 *Term Rep.* 123. *Glaister* v. *Hewer*, 8 *Term Rep.* 69. 3 *Caines' Rep.* 190. 1 *Johns. Rep.* 144. 3 *Johns. Rep.* 247.) Those courts are, therefore, *co-ordinate*, so far as regards this subject of complaint.

The complainant first elected the mayor's court as his *forum*, for deciding the question of set-off. The parties there mutually submitted to the jurisdiction of that court; and there was a regular decision upon the merits, denying the set-off.

The question now is, whether the chancellor was bound to disregard the decision of the mayor's court, and to re-examine and decide upon the merits of the complainant's bill, as if the relief had been originally sought in his court?

The general proposition, that courts of concurrent jurisdiction cannot rightfully examine and reverse each other's decisions, is undeniable: it is founded on principles of obvious policy and convenience; and to permit such clashing and intrusive interference, would be to confound all distinctions between *concurrent* and *appellate* jurisdiction.

The inquiry, therefore, is, whether the case stated in the complainant's bill falls within the reason and policy of that rule?

The equity powers of the common law courts extend only to cases which arise *incidentally* in suits at law: such as relieving bail, granting new trials, and setting off judgments. These powers are exercised, *summarily*, in the courts of law; and, according to the organization of our judicial system, these decisions, not forming part of the record, are not the subject of writ of error. Yet, these equitable powers, having been found indispensable to the convenient administration of justice, are now within the established and acknowledged jurisdiction of the courts of law.

If, then, it be admitted that the mayor's court had rightful cognizance of the subject; that the question of set-off was regularly submitted to that *forum*, and a decision was thereupon

IN ERROR.
......
ALBANY,
April, 1816.

SIMSON
v.
HART.

made, it seems to me, upon reason and principle, that this case falls within the rule which prohibits one court from reviewing the decisions of another court of competent authority, on the same subject.

Whether the exercise of equity powers, by the mayor's court is, or ought to be, subject to writ of error, are questions which do not appertain to the court of chancery, and, therefore, have no relation to the question now before this court. Nor do I think it material whether, in technical strictness, the point decided in the mayor's court be " res judicata ;" nor whether the claim for relief in that court, was " ex debito justitiæ," or a matter resting " in discretion." As applied to this case, these distinctions appear to be little more than a dispute about words. Whether a set-off shall be allowed in such a case, is, indeed, a matter resting in discretion : but this means judicial discretion, regulated by the principles of equity and justice ; not a wanton, capricious, or arbitrary determination of the will.

It is said, the order of the mayor's court, denying the set-off, was not final and conclusive in that court, and, therefore, ought not to be held conclusive in chancery. But this is not the test, as between co-ordinate courts of concurrent jurisdiction; because each may re-examine its own decisions, it does not follow that one court can rightfully examine the decisions of another court of equal authority.

Whether the forms and practice of the common law courts, in regard to their equity powers, allow of summary decisions, by entries in their minutes only, or whether they require those proceedings to be entered of record, cannot, in my judgment, form a criterion of chancery jurisdiction.

The party claiming the set-off had his election : he might have originally sought that relief in chancery, subject to appeal ; or he was at liberty to seek that remedy by an application to the summary discretion of the mayor's court, not subject to a writ of error. He chose the latter course ; and the convenience of suitors, and the interests of justice, require, that he should be concluded by his election. A different rule would destroy the comity and respect between the co-ordinate tribunals, which are essential to harmony in our judicial system, and highly favourable to the pure administration of justice. Besides, it would be unjust, for want of mutuality ; for if the application

*IN ERROR.*
.......
ALBANY,
April, 1816.

SIMSON
v.
HART.

in the mayor's court had been successful, it is admitted that such decision would have been conclusive against the respondent. Is it fit and equitable, that the complainant shall be allowed to litigate the question of set-off in the court of law, as a mere experiment, whereby he may gain, but cannot lose his object?

I think the motion for set-off rests on the same footing as a motion for a new trial, as regards the question now before us ; and the opinion of Lord *Redesdale*, in the case of *Bateman* v. *Willoe*, (1 *Sch. & Lef.* 201.,) is high authority upon that analogous point. It is there decided that the court of chancery will not grant a new trial, if it has been denied at law; and Lord *Redesdale* says, " it is not sufficient to show that injustice has been done, but that it has been done under circumstances which authorize the court to interfere. Because, if a matter has already been investigated in a court of justice, according to the common and ordinary rules of investigation, a court of equity cannot take on itself to enter into it again."

There is, however, a class of cases wherein the courts of law, not having equity powers adapted to, or not commensurate with the justice of the case, the court of chancery has rightfully assumed jurisdiction ; although courts of law had collaterally held cognizance of the subject ; (*Bromley* v. *Holland*, 5 *Ves.* 610. 7 *Ves.* 3. *Rathbone* v. *Warren*, 10 *Johns. Rep.* 587. ;) but those cases are plainly distinguishable from the present case.

But it is contended, that the complainant's bill contains *new matter*, which affords ground for relief in chancery, and which was not the subject of decision in the mayor's court. The *new fact*, so relied on, is, that there are several unsatisfied judgments against *E. Hart*, which were docketed prior to the judgment in favour of the appellant against *Joel* and *Ephraim Hart*, which fact was not shown upon the application in the mayor's court.

The bill, however, does not aver that the complainant believes that *Ephraim Hart* is insolvent; nor is it pretended that the complainant has come to the knowledge of those judgments, *since the application* to the mayor's court. The bill does not seek relief against *laches, fraud*, or *mistake ;* nor is the court of chancery asked to interfere, on the ground of *newly discovered evidence.* It is not a *new fact*, but merely an additional item of

IN ERROR.
......
ALBANY,
April, 1816.

SIMSON
v.
HART.

evidence, tending to show the *insecurity* of *Simson's* judgment against *Joel* and *Ephraim Hart;* which additional fact existed prior to the motion for set-off; and, for aught that appears, it was known to *Simson*, and the evidence of it completely in his power, at the time of his application to the mayor's court; but of which, it seems, he did not then choose to avail himself.

No doubt, a rehearing may enable a party to come better prepared; he may give additional evidence, and urge new arguments, upon the point in litigation; but pitiable indeed would be the condition of suitors, if these were deemed sufficient grounds, not merely for a *new trial*, but for a *new suit*, in another court of concurrent jurisdiction. Vexation, expense, and delay, would be infinite, under such a rule. *Justice*, instead of being seated on a *stable throne*, would become an *ignis fatuus*, tantalizing and mocking her followers, by continually eluding their grasp. *"Interest reipublicæ ut sit finis litium,"* is the maxim for this case. (*Greathead* v. *Bromley*, 7 *T. R.* 455. *Schemerhorn* v. *Weatherhead*, 1 *East's Rep.* 537.)

The question is not, whether the mayor's court decided wrong; but whether the chancellor had a right to correct the proceeding of the mayor's court, if it were wrong.

My opinion is that his honour, the chancellor, properly disclaimed jurisdiction in the case; and that the decree ought to be affirmed.

VAN NESS, J., was of the same opinion.

SPENCER, J. There are two points for the consideration of the court : 1. Was the appellant entitled to the relief prayed for in his bill, independently of his application to the mayor's court of *New-York*, and had not that application been made ? 2. Is the decision of the mayor's court such a determination as precludes a court of equity from entertaining the question, and affording the relief sought for ?

The chancellor, in assigning his reasons for dismissing the appellant's bill, has not discussed the first question, nor was it necessary for him to do so. That question has been made, and holding a different opinion on the second point, it is necessary for me to consider both.

The answer admits the judgments as stated, and also the judgments of third persons against the respondent, and that he

IN ERROR.
.......
ALBANY,
April, 1816.

SIMSON
v.
HART.

is unable to pay them, and is on the limits of the prison. It does not admit, in terms, the insolvency of *Ephraim Hart,* but states that the respondent does not believe him to be insolvent; but that, on the contrary, if he should be so fortunate as to recover what is due to him, he would be able to pay all his debts. The answer arraigns the justice of the appellant's judgment, but principally insists, that the mayor's court refused to order the set-off. The appellant put in a general replication to the answer. No proofs appear to have been made, other than those arising from the bill and answer.

As to the facts which are to guide this court, we can only consider such as are stated in the bill, and admitted by the answer. The answer being replied to, the allegations set up in it, and which were not an answer to the interrogatories in the bill, must be proved otherwise than by the respondent's oath. It is a principle, about which there can be no dispute, that matters set up in an answer, by way of avoidance, and not necessarily drawn forth by the bill, must, after a general replication, be proved, or the defendant cannot avail himself of them. Every thing' therefore, alleged in the answer, impeaching the justice of the appellant's judgment, must be laid out of the case. Independently of this principle, I do not think it competent to the respondent to draw in question, collaterally, the effect of the appellant's judgment.

In my opinion, we are authorized to draw the conclusion from the admissions in the answer, that the respondent was absolutely insolvent, and that *Ephraim Hart* was extremely embarrassed in his affairs, insomuch that the appellant's chance of coercing the payment of his judgment, by execution, was almost hopeless. Such a state of facts furnished a strong and substantial basis for the interposition of a court of equity, on the ground of a meditated fraud. Nothing could be more unjust than to leave to the respondent the power of collecting his judgment of the appellant, against which, from the insolvent condition of the respondent, and the embarrassed state of his father, the appellant could not indemnify himself, by collecting any part of his judgment from them; and, although it is difficult to settle precisely the extent of the jurisdiction of the court of chancery, one of its acknowledged and most salutary attributes consists in the power to put a stop to proceedings injurious, or unconscientious. I have no hesitation in saying, that chancery

had original and rightful jurisdiction of the suit, and was fully authorized, by a series of adjudged cases, in issuing a perpetual injunction against the respondent's suing out, or executing an execution on his judgment, upon the appellant's entering satisfaction for so much as the respondent's judgment amounted to, on his judgment; or, which would have produced the same result, decreeing that the respondent should acknowledge satisfaction of record, upon the like terms.

There is no force in the objection that the judgments are not in the same right; it is well settled, " that although the demands, as being joint and several, are not, strictly speaking, due in the same right, yet if the legal or equitable liabilities or claims of many become vested in, or may be urged against one, they may be set-off against separate demands, and *vice versa;*" (*Bull. N. P.* 336. 2 *H. Bl.* 587. 4 *Term Rep.* 123.;) and in some of the cases this was done without any pretence of insolvency in either of the parties.

The objection is equally untenable, that the judgment in favour of the appellant, being for a *tort*, the respondent's judgment ought not to be set-off, and deducted therefrom, because there is no contribution among trespassers. The respondent owes the appellant the whole of that judgment; and he could enforce it against him alone, if he saw fit.

That the mayor's court had the power to direct the set-off applied for, cannot be doubted. The supreme court did so in *Schermerhorn* v. *Schermerhorn*, (3 *Caines' Rep.* 190.) In *Brewerton* v. *Harris*, (1 *Johns. Rep.* 144.,) it was refused, because the larger judgment had been obtained in the common pleas; but so far were we from doubting of the right, that we intimated that the court of common pleas would afford the relief sought for.

In directing a set-off of judgments, courts of law proceed upon the equity of the statute authorizing set-offs; for, confessedly, the case is not within the letter of the act. Their power consists in the authority they hold over suitors in their courts ; and it may be fitly said, that the exercise of the power is the exertion of the law of the courts, rather than any known, express, and delegated power. Suitors may ask the interference of courts of law, in effecting a set-off, not *ex debito justitæ*, but *ex gratia curiæ.* In a court of equity, and in a case like the present, it is otherwise. It is a power incidental to that court, and has

SIMSON
v.
HART.

been long exercised exclusively ; for it is only within a few years that courts of law have undertaken to set off one judgment against another.

I am not aware that, thus far, I have advanced any opinion in oppsition to that of his honour the chancellor; but I am under the necessity of differing from him as to the only remaining point. No judge, I am persuaded, ever bestowed more pains and laborious research upon causes coming before him for decision than the present chancellor. This consideration has induced me to as careful an examination of the case as I am able to make, and the result is, that I cannot assent to the opinion, that the decision on the motion made by the appellant in the mayor's court, ousted the jurisdiction of a court of equity, upon the principle that it was *res judicata*, or on the ground of comity. This result is founded, not only on the manner of deciding questions of that kind on summary motion, but, as I conceive, on authority. The motion itself was a summary application to the mayor's court; and it is a fact, well known, that such motions do not admit of that grave discussion and consideration, as questions arising on demurrer, in arrest of judgment, or for a new trial. Again; decisions on summary application can never be thrown into the shape of a record, and become the subject of review in any other court. In the same court these decisions are not considered so final and decisive as to furnish a bar to another and further discussion of the question. Courts, to prevent vexatious and repeated applications on the same point, have rules which preclude the agitation of the same question on the same state of facts : these rules are for the orderly conduct of business, and are not founded on the principle of *res judicata*. It is not uncommon, in courts of law, to deny a motion one day, and on another to grant it, on a more enlarged state of facts.

Upon authority, it seems to me that the decision of the mayor's court was not decisive of the question. (7 *Ves.* 14, 15. 5 *Ves.* 108. *Rep. temp. Finch*, 472.) Were it necessary to uphold the jurisdiction of the court of chancery in this case, the new fact, stated substantially in the bill, that *Ephraim Hart* was also insolvent, would seem to put that question beyond doubt; for, certainly, the decision on the summary application ought to have no greater effect in ousting the court of chancery of its jurisdiction than it would have upon the court which made the

decision; and it appears to me that even that court, on another
application, by bringing before it that additional fact, might, and ought to entertain the question a second time.

I perfectly subscribe to the proposition, that the judgment of a court of competent jurisdiction, upon a matter within its cognizance, is final and conclusive, unless appealed from, and reversed or vacated; but this rule, in my apprehension, does not embrace this case, because it has no quality of a judgment.

The jurisdiction of chancery has been narrowed, and very properly so, in many cases. Since courts of law have adop.ed more liberal and enlarged notions, and will grant new trials, when the circumstances of the case satisfy them that injustice has been done, courts of equity, with great propriety, refuse their interference in such cases.

In modern times, the comity due from one court of co ordinate jurisdiction to another, has been better understood, and more liberally extended; and I would not, in the slightest degree, impugn those salutary principles which preclude one court from re-examining, except in the regular method of appeal, or writ of error, the judicial decisions of another court having jurisdiction of the subject matter. The cases cited and relied on by his honour the chanceller, (1 *Johns. Cases*, 436. 6 *Term Rep.* 471. 1 *Sch. & Lef.* 201.,) meet my most decided approbation; but, in my judgment, the principles adopted in those cases do not apply to a decision upon a summary application, nor to a case where, from the ascertainment of a new fact not brought before the court; on the original application, even the same court might, with entire propriety, hear a new discussion of the question. I do not, therefore, differ from his honour the chancellor in his principles : I dissent from him only in the application of acknowledged principles to this particular case. My opinion, accordingly is, that the decree appealed from, ought to be reversed.

THOMPSON, Ch. J., and YATES, J., were of the same opinion.

All the *senators* (except VAN VECHTEN, ALLEN, COCHRAN, HASCALL, STEWART, and TIBBITS, who concurred with Mr. J. PLATT,) being of the same opinion, it was, thereupon, ORDERED, ADJUDGED, and DECREED, that the order of the court of chancery be reversed,* with costs to be taxed, and that the pro-

* *For reversing,* 21, *for affirming,* 8.

IN ERROR.
........
ALBANY,
April, 1816.

SIMSON
v.
HART.
ceedings be remitted to the court of chancery, to the end that the set-off, in the pleadings in the cause, may be allowed, and that the same be proceeded upon according to law.

Decree reversed.