# MUSCOGEE SUPERIOR COURT,

## OCTOBER TERM, 1842.

---

WILLIAM D. CARNES and LUCY E. CARNES, his wife, and others, vs. SEABORN JONES, and JOHN C. MANGHAM, Sheriff.

*Bill of Discovery, Relief and Injunction, in Muscogee Superior Court. Demurrer.*

1st. Distributees of an intestate's estate, after having obtained a decree against the administrator, who is insolvent, may, in Equity, pursue into the hands of the security, who is also insolvent, a note given for property sold, as a part of intestate's effects, and transferred to him to protect him on his suretiship, though it has been reduced to judgment, and have it applied in part or whole satisfaction of the decree.

2d. The security in such case is a trustee for creditors and distributees, and by having the judgment so applied, it is paying so much of his liability on the bond, and therefore only giving effect to the contracts between him and his principal.

3rd. It is no objection that the action at law on the note was not defined. This does not change the nature of the trust.

4th. As it does not appear from the proceedings that there are creditors who have a higher claim than distributees, their rights cannot be discussed.

5th. Creditors have the same rights as distributees on the bond, and they may pursue their remedy.

This bill states, that *Lucy E. Carnes*, formerly *Lucy E. Dillingham*, and *George W. Dillingham*, an infant son, are the heirs and representatives of *George W. Dillingham*, late of said County, deceased; that *John Dillingham* became the sole administrator of the estate of *George W. Dillingham*, deceased, and gave the defendant *Jones* and one *Eli S. Shorter*, as his securities, in the sum of two hundred thousand dollars, on his administration bond; that the said *John Dillingham* wasted the estate, and had paid nothing to the complainants, *Lucy* and *George*, nor the complainant *William D.,*

who, by virtue of intermarriage with the said *Lucy*, became entitled to her distributive share; that at the sale made by the administrator of the property of the deceased, *Mrs. Carnes*, then *Mrs. Dillingham*, the widow, became the purchaser of some of the articles of furniture, &c. amounting to the sum of eighteen hundred and seventy-four dollars and five cents, for which she gave her note to *John Dillingham*, the administrator, with the endorsement of her mother, *Mrs. Tickner*, one of the complainants, as security, supposing the same would be given up to her in part payment of her distributive share; that the administrator, without any other consideration than upon the pretence of indemnifying the defendant *Jones* against his liability as security to the administration bond, transferred the said note, with a large amount of other assetts of the estate, to the said *Jones*, who received the same, well knowing that they were not the property of the said administrator, but belonged to the estate of which he was the representative; that the said *Jones* subsequently commenced suit upon the said note in the Superior Court of the said County, and at October term, 1841, obtained a judgment against the complainants, *Lucy E. Carnes* and *William D. Carnes*, with whom she had in the meantime intermarried, and complainants, *Lewis C. Allen* and *Edward Taylor*, securities on appeal, and against *Harriet C. Tickner*, as endorser, and the said *Allen* and *Taylor* as the securities of said *Harriet* on appeal; that upon said judgment, *fi. fas.* had been issued, and placed in the hands of the defendant *Mangham*, as Sheriff, to be levied and collected. The bill further states, that the complainants, *Mrs. Carnes* and the infant child *George W.*, filed a bill for an account and distribution, against the administrator, *John Dillingham*, which was prosecuted to final trial at October term, 1841, of Muscogee Superior Court, and on which trial the complainants, *Lucy E.* and *Wm. D.*, by virtue of marriage, and the said *George W.*, recovered a decree for seven thousand four hundred and twenty-five dollars and eighty-three cents, with cost of suit; that upon that decree a *fi. fa.* has been issued, and returned by the sheriff, with a report that he can find nothing on which to levy it. The bill further states, that the administrator is insolvent, and has removed from the county, that *Jones* is insolvent, and that the estate of *Shorter*, the only co-security of *Jones*, so far as it lies in the State of Georgia, is insolvent; that the complainants, *William D.*, *Lucy E.* and the infant child *George W.*,

have commenced suit against the said *John Dillingham*, and that the defendant *Jones*, and the representatives of the estate of *Shorter*, on the administration bond, which suit is now progressing in the Superior Court of said county, for the recovery of the amount of the decree already rendered in their behalf against the administrator, in the bill heretofore filed against him, and that complainant *Carnes* has proposed to the defendant *Jones*, to enter the amount of the judgment held by him, *Jones*, as a credit upon the demand now in suit, in favour of himself, his wife and the infant child, upon the administration bond, which proposition the said *Jones* has rejected. The bill prays that the defendant *Jones* may be enjoined from levying his *fi. fas.* and collecting them out of the property of the defendants in *fi. fa.* and that they may be appropriated by a decree of the Court of Chancery, in part payment of the recovery already had against the administrator by the heirs and distributees, and for general relief. Such are the facts, and such the prayer of the bill, and by way of defence to it, a general demurrer, for want of equity in the bill, is filed.

The demurrer admits the facts charged to be true; and we are, with this admission before us, to determine whether they contain sufficient equitable matter to justify the retention of the bill, and of the injunction. Many objections to the admissibility of the application of the complainants to have the demand in favour of *Jones*, the defendant, entered as a credit, or partial payment, upon the one established by a portion of them against the administrator, are taken by defendants' counsel. It is contended, that, by the Laws governing the subject of set off, these demands cannot be opposed to each other for that purpose. It is unnecessary to pass upon each of these various objections in detail. As they take effect at Law, the objections are good. There is, upon the face of these demands, evidently no adaptation of the one to the payment of the other. In the decree rendered against the administrator, *Wm. D. Carnes*, *Lucy E. Carnes*, and *George W. Dillingham*, (by his guardian,) are the complainants, and *John Dillingham* is the defendant; in the case which is the subject of this injunction, *Seaborn Jones* is plaintiff, *William D. Carnes*, and *Mrs. Lucy E. Carnes*, and *Mrs. Harriet C. Tickner*, with their securities on appeal, are the defendants. Now, by the strict rules of the Law, other difficulties out of the way, even

[Carnes & Carnes vs. Jones, & Mangham, Sheriff.]

"a joint and separate debt cannot be set off against each other."—*Montagu* on Set off, 25. This is, however, not all decisive of the power of a Court of Chancery in the premises. Indeed, that the party seeking relief is remediless by the rules of the Law proper, is a leading—nay, in many cases, an indispensable ingredient in the jurisdiction of a Court of Chancery. Are there any equitable facts in the case made by this bill which will relieve the application of the complainants from the operation of the rules which obtain, ordinarily, in cases of set off? is the question. As we have seen, the note sued by *Jones* is represented in the bill to have been given by *Mrs. Dillingham*, the widow, and one of the distributees, to the administrator, in payment for a portion of the estate of her deceased husband, that it was transferred to *Jones*, with other assets, as a prospective indemnity against his liability as security on the administration bond, and without any other consideration; that *Jones* received the same with knowledge of the fact that it did not belong to the administrator, but to the estate which he represented; that complainants, *Carnes*, his wife, and the infant child, as the heirs and distributees of the administrator's intestate, have recovered of the administrator, as their portion of the estate, seven thousand four hundred and twenty-five dollars and eighty-three cents, with costs; that the Sheriff is unable to make the money thus recovered; that the administrator, and *Jones* the defendant, who is also one of the securities, and the estate of the only remaining co-security, so far as it is subject to the judgment of the complainants, are also insolvent, and that suit is now in progress against *Jones*, on his bond, predicated on the recovery had against his principal, the administrator. The mode in which *Jones* acquired the note in question, is relied upon to subject him to the relation in equity, of a trustee of this fund for the heirs and distributees, who are seeking to have it appropriated to the partial payment of their demand now in suit on the administration bond. It is certainly true, that the note held by *Jones*, was, upon the execution of it, the right and property, in Law, of *John Dillingham*, to whom it was given. The circumstance of its having been passed in exchange for property of the estate of his intestate does not vary the usual consequence of the execution and delivery of it to him: it was still a contract to pay *John Dillingham* the sum specified in the paper. It is the property for which the note was given, that the administrator, and his securities, are, or would be alone liable in ordinary

circumstances; and the legitimate consequence of that fact, is the right of the administrator to have and use the note taken by him in the course of his administration as his own.—3 *McCord*, 371. 1 *Hill's* Ch. 25. 2 *Hill's* Ch. 268. 1 *Bail.* 599. At the same time, this right of dominion over even the proceeds of property held in trust, by the administrator, is subjected in Chancery to wholesome restraints, "It is true that the proceeds of such choses in action are in equity regarded as assets, and will be so treated, and considered in the hands of the executor or administrator to whom they were made payable, or any of his immediate representatives."—1 *Hill's* C. R. 25. "So too, in all such cases they would be protected from being made liable by the process of the Law for the debts of the executor or administrator."—*Glass* v *Bexter*, 4 Rep. 154. *Talbot* v. *Harrison*, 1 *Bail.* 599. "And in all cases of fraudulent aliena- tion, the Court would follow, and treat them as assets of the estate."— 2 *Hill's* Ch. 271. And again: "I have already said that an aliena- tion of the bonds or notes payable to an executor or administrator ought not to be overreached or defeated, but by a Superior Equity, or by fraud." Same: "An abuse of a trust can confer no rights on a party abusing it, or on those who claim in privity with him. In Courts of Equity it (this principle) is adopted with a universality of application."—*Story's* Com. on Equity, 503. "Persons colluding with the executor or administrator in a known misapplication of the assets of the estate, are made responsible for the property in their hands."—2 *Story's* Com. on Equity, 502. 7 *Johns.* Ch. 150. "This author, so very full to the point, too, that it matters not how many, nor what mutations the trust property may have undergone, so long as its identity can be traced, it will be held responsible to the claim of whomsoever may in Equity be entitled to receive it."— Same vol. 503. Can the claim of *Jones* to the fund in dispute, viewed in its most favourable light, be regarded as equal, in equity, to that of a portion of the complainants, taking as true all which is contained in this bill of complaint? I think not. But it is said, that the rendition of judgment on the note held by *Jones*, precludes all inquiry into the subject of its consideration, or the nature of the transfer of it to *Jones*; that the complainants in the bill, who were sued upon it, are estopped by the judgment, from denying that they owe to *Jones*, both in Law, and Equity, the sum involved in this injunction. Estoppels are said in Law "to be odious," as lying in

the way of enquiry. But I think the doctrine has been stretched too far in the argument, which has been made by the defendants' counsel in the case under consideration. That the adjudication of a cause by a Court clothed with competent jurisdiction, of the facts and principles involved in it, is, as a general rule, a bar to subsequent litigation touching the same matter between the same parties as certainly true. And by the comity of Courts of Justice this bar or estoppel is not only respected in the Court, where the adjudication takes place, but equally by all other Courts : This, that there may be an end of controversy. " Courts of Equity will not relieve against a judgment at Law, where the case in equity proceeds upon a defence equally available at Law ; but the plaintiff ought to establish some special ground for relief."—2 *Story's* Equi. 178. 5 *Paige* Ch. Rep. 219, 7 *Cranch* 332. 1 *Johns.* Ch. 49. *Dev.* Equi. 289. 2 Ch. Ca. 93. 3 *Atk.* 223. The language of these cases, however, does not extend the estoppel to other instances than those in which relief in equity is sought, on a ground of defence that was good and available in a case at Law. They do not purport to comprehend those cases in equity where the ground of relief against the judgment at Law, is of a nature, cognizable alone in a Court of Chancery. It is clear, that in the event that the application for relief in Chancery against the judgment at Law, is placed on a ground that could not have been recognized in the Court, whose judgment is in question, that the first trial cannot be regarded as a bar or estoppel in the logical and proper acceptation of that term, to the consideration of the ground taken in the last resort in Chancery : This, for the obvious reason that the Court whose action in the premises is quoted as a bar, had not jurisdiction over the subject matter sought to be litigated in the second suit. Certain it is, that the authorities cited leave the doctrine within the limits I have defined, and on the contrary, numerous cases are to be found in which relief has been granted in Courts of Chancery, against judgments at Law on considerations of a kind exclusively equitable, which existed at and prior to the time of rendition of the judgment attacked. The cases of *French* v. *Garner*, and others, 7 *Port.* 549 ; *Gales* vs. *Buchanan & Pollock*, 2 *Murph.* 145 ; *Simpson* v. *Hart*, 14 *Johns.* 63, are of this class. Now, at the time of trial of the actions at Law that were brought by *Jones*, there existed no means, so far as the bill discloses, by which judgment could have been prevented. There was in fact no defence at Law to the

[Carnes & Carnes vs. Jones, & Mangham, Sheriff.]

cases pending. Receiving the note as he did from the legal owner of it, *Jones* was in order, being in a Court of Law, to have demanded judgment, had the paper sued upon been simply given to him. Nor should it be overlooked, that the demand of the complainants, now in judgment against the administrator, and in suit on his bond, up to the final trial of the cases in favour of *Jones*, had not been investigated at Law, and found to exist. The prayer of the bill is greatly strengthened by an additional and material element of equity, viz: the alleged insolvency, and consequent inability of the defendant, *Jones*, and the estate of his co-security, so far at least as it is liable to the Laws and process of the Courts of this State, to respond to the recovery already had against the administrator, and which is now in suit, as the bill states, against this defendant, and the other parties to the administration bond. Insolvency has been very often made the ground in equity for parting with the rules by which Courts of Common Law are governed in relation to the subject of set off, and the good sense and justice of it, are at once seen. The difference in the strength of the case of that man who is merely seeking to avoid the inconvenience of mutual payments, and of him who is threatened with the loss of his money if he be required to part from it, is a very marked one.—2 *Paige's* Ch. 581. This case embraces a very extensive selection of authorities in support of the proposition. The cases quoted from and cited, are, 2 Eq. Cas. Abri. 10. 2 *Vern.* 117. 1 *Peere Williams*, 325. 4 Com. Rep. 302. 2 *Ham.* Ohio R. 320. 1 *Litt.* 153. 1 *Monroe* Rep. 194. 4 *Bibb* R. 356. 14 *Johns.* 63. The case last quoted bears, too, on other points of the bill before me, and to the extent to which it does so, is favorable to it. It was the language of Chief Justice MARSHALL, in delivering the opinion of the Supreme Court, in the case of the *Marine Insurance Company of Alexandria* vs. *Hodgins*, "that without attempting to draw any precise line, to which Courts of Equity will advance, and beyond which they cannot pass, in restraining parties from availing themselves of judgments obtained at Law, it may safely be said that any fact which clearly proves it to be against conscience to execute a judgment, and of which the injured party could not have availed himself in a Court of Law, or which he might have availed himself at Law, but was prevented by fraud or accident, unmixed with any fraud or negligence in himself or his agents, will justify an application to a Court of Chancery." Judge STORY adopts the language of

[Carnes & Carnes vs. Jones, & Mangham, Sheriff.]

this case in his Com. on Equity—(see 2 vol. 173)—I regard the case at bar as falling within this proposition : Upon the supposition that all which is stated in the bill is true, the execution of the judgment, now the subject of injunction, would be " against conscience," and for reasons of which the injured parties could not have availed themselves in a Court of Law. If, however, all inquiry into the consideration for which the note in dispute was given be dismissed, it is remarkable that, while the granting of the prayer of the bill would be but the rendering partial payment to the distributees of a claim already established in their behalf, and for which *Jones* is represented as being liable, it will be at the same time in its effect on the defendant, but the fulfilment of the very object of the transfer of the note to him, to wit : the diminution of his liability on the administration bond, to an extent in precise correspondence with the fund thus appropriated. It has been urged, in defence, that if *Jones* be liable to the extent of this fund, as trustee at the suit of the distributees of *George W. Dillingham,* that he is liable in the same manner to the creditors of *George W. Dillingham* also, and that their claim upon the proceeds of the note in question is paramount to that of the complainants. It should be observed, that, stripped of incidental parties, the motion is to have a subsisting judgment in favor of *John Dillingham,* or one who holds in privity with him, and who rests for this purpose on his title against *Wm. D. Carnes* and his wife, paid by the entering it as a credit upon a judgment for a large sum outstanding in favor of *Carnes* and wife against *Dillingham.* The general rule in cases of application to have a set off declared, or mutual demands credited on each other, is, that the equities existing between the parties must be adjusted and satisfied before the claims of third persons can be inquired into or heard. The principle is illustrated by reference to the case of mutual demands between an insolvent intestate and another. In an action brought by the representative upon the demand of his intestate, it is no reply to the counter claim of the debtor, that all the assets of the insolvent intestate will be needed to pay debts of higher dignity than that held by the debtor of whom a collection is sought to be made. The uniform course has been to regard the right of the debtor to a discount of the one demand upon the other in such a case, as superior to the claims of all other persons. It is the excess alone, if any after balance struck, to which those persons are entitled. This is the rule equally

w

at Law and in Equity, and this too, without reference to the relevancy of the respective demands to each other in their origin. Should the case at bar be regarded as not falling within the general rule, however, yet the motion for the dissolution of the injunction ought not to prevail. It is observable, that the creditors are not now in pursuit of this fund. The argument does not come from them. It comes from one over whom the argument admits the complainants have a superior equity. The evidence too, which shews there were outstanding claims in favor of creditors, unsatisfied at the time the decree in favour of the distributees was rendered, shews also that those claims were allowed the administrator in the account taken with him by the distributees. The counsel for the defendants have erroneously supposed too, that the bill alleges the estate of *George W. Dillingham* to have been insolvent. The bill alleges that *John Dillingham*, against whom the recovery of the distributees took place, and to whom the title to the fund in dispute is traced, and his sureties, are insolvent. Certainly as between the legal title of *John Dillingham* to the fund in controversy, and the rights of the complainants in the case made by the bill, the latter should be preferred. Nor should it be forgotten that *Jones* is not seeking to make this collection, so far at least as appears for the present, as trustee for the creditors or others, but for himself and on his own account: and the pecuniary irresponsibility of *Jones*, is one of the leading features of equity in the bill. Certainly with the interest, which even the argument itself admits the complainants have in the correct appropriation of the money due on *Jones' fi. fa.*, it should not, in the circumstances detailed in the bill, be permitted to go into the hands of the defendant *Jones*. Another reason given for the dismissal of the bill, is, that the complainants have not asked for an injunction of their own *fi. fa.*, and suit on the administration bond also, pending the injunction of the *fi. fa.*, of the defendant *Jones:* and this reason is placed upon the supposed injustice and inequality of allowing one case to proceed while the other is locked up on complainants' motion. No authority is quoted in support of this position. I shall not stop to enquire into the utility or regularity of an injuntion in favor of one to arrest the progress of one's own case, but will content myself with observing, that should facts now exist, or hereafter transpire, having the effect of rendering unjust the prosecution by complainants of their *fi. fa.* against *Dillingham*, or their action on the ad-

Carnes & Carnes vs. Jones, & Mangham, Sheriff.]

ministration bond, that the Courts of justice are open to those who are likely to be injured thereby. The bill certainly discloses for the present no wrong to the defendant in *fi. fa.* or to others thereby, and it may be, with safety and propriety, left to those interested in an injunction of the *fi. fa.* which complainants have obtained, or the suit they are carrying forward, to apply for it on a proper shewing. Other arguments have been urged in defence, not so much affecting the equity of the bill as bringing to the attention of the chancellor certain difficulties which are supposed to lie in the way of giving effect to it. I have considered them, and they are regarded as not insuperable. Upon the whole, I am of opinion, that this bill should be answered. The motion for its dismissal is accordingly denied.

### MARSHALL J. WELLBORN, J. S. C. C. C.

HOLT & ALEXANDER, and FOSTER & HOWARD, for Complainants.
JONES & BENNING, for Defendants.