### Duncan *against* Lyon.

After a verdict at law, the party comes too late with a bill of discovery.     *May* 10 and 18.

After a trial at law, or a report of referees, a party cannot have the aid of this court, unless he can impeach the justice of the verdict or report, by facts or on grounds of which he could not have availed himself before, or was prevented from doing it, by fraud or accident, or by the act of the opposite party without any negligence or fault on his part.·

A *set-off* is not allowed where the demand is for uncertain damages arising ty,from a breach of covenant.

A Court of Equity follows the same general rules as a court of law, as to *set-off*. There must be mutual debts, to authorise a *set-off*.

Equity has not an *exclusive* jurisdiction between *co-partners* in matters of account.

An action of account lies at law, by one partner, against his co-partner ; and *it seems*, that there is no good reason why that action is not, sometimes, resorted to, instead of a bill in equity.

An action of covenant at law, lies by one partner against another, where the articles contain a covenant to account.

THE bill, filed *August* 27th, 1817, stated, in substance, that the plaintiff and defendant entered into an agreement under seal, dated the 20th of *July*, 1809, which was set forth in this bill, and which related to the plaintiff's furnishing *timber*, &c. which the defendant was to take to *Montreal* or *Quebec*, &c. and to pay the plaintiff half the proceeds, &c. and furnish him with an account thereof, &c. The bill then detailed, at length, the transactions and conduct of the defendant, &c. and stated, that the plaintiff, before and since 1809, was a resident at *Schenectady*, and had no opportunity from personal in-

1818.

DUNCAN
v.
LYON.

spection, of becoming acquainted with the acts of the defendant. That the plaintiff is willing to come to a fair account with the defendant, and make all just allowances, but the defendant refuses to render to the plaintiff any detailed accounts of his transactions, and has sued the plaintiff at law, in an action of covenant on the agreement, and alleged breaches, &c. to which the plaintiff pleaded the general issue and gave notice of special matter to be given in evidence, &c. The bill contained a particular interrogatory, that the defendant may discover and set forth a detailed account of all the staves and lumber, &c. and the sales, &c.

That the defendant, under an affidavit, that the suit at law would require the examination of a long account, obtained an order of the Supreme Court for a reference, and had noticed the cause for a hearing, before the referees, on the 28th of *August*, 1817. "That the plaintiff cannot make out his defence, nor obtain a report of the referees in his favour, from the account of the defendant being fraudulently withheld, and from the facts stated, which are essential to his defence and set off, resting, in a great measure, in the knowledge of the defendant, and therefore, not to be made out but from a full discovery of the defendant." Prayer, that the defendant may be decreed to come to a fair and just account with the plaintiff, and to pay what shall appear to be due to him, and for an injunction to stay proceedings at law, &c. The injunction was granted the 27th of *August*.

The answer of the defendant, filed *October* 21st, 1817, after giving a minute detail of the transactions, which it is unnecessary to notice, stated, that the plaintiff owed on the account, 425 dollars, and 32 cents, over and above the great damages he had sustained by occasion of the refusal of the plaintiff to perform his part of the contract. That the defendant sued the plaintiff at law, in *January*, 1816, in an action of covenant on the agreement, and assigned breaches in

his declaration; that the plaintiff pleaded, and gave no-
tice of special matters of defence; that the issue was
joined in *July*, 1816; that the Supreme Court ordered a
reference of the cause, and the plaintiff nominated one of
the referees; that in *October* term, 1816, another re-
feree was appointed, in the stead of the one chosen by the
plaintiff; and in *May* term, 1817, other referees were ap-
pointed, one of whom was nominated by the plaintiff.
That on the 7th of *August*, the cause was regularly no-
ticed for a hearing on the 28th of *August*, before the re-
ferees. That the referees met on that day, and heard the
proofs and allegations of the defendant; that no person
appeared on the part of the plaintiff; and the referees re-
ported in favour of the defendant for 2,500 dollars, dam-
ages, and delivered their report to him; that about three
or four hours after the report was delivered, the injunc-
tion obtained in this cause was served.

That on the hearing before the referees, the defendan.
gave in evidence a true account of the moneys for which
all the timber he had taken from the lands of the plaintiff,
was sold, &c.; a true account of the expenses in and about
the same, &c.; the original covenant between the parties;
the lease to *J. S.*; the order of the plaintiff, forbidding
the defendant to take timber after the lease; the seisure by
*J. S.* under that order, and prosecutions by him; and the
refusal of the persons employed by the defendant to work,
after such prohibition, &c.

The defendant, on the 25th of *March*, 1818, put in a fur-
ther answer to the plaintiff's bill.

*Cady*, for the defendant, now moved that the injunction, May 13
heretofore issued in this cause, be dissolved; and if not,
that leave be granted to the defendant to enter up judg-
ment on the report mentioned in his answer, or that the
plaintiff bring into court and deposit a sum equal to the
amount reported in favour of the defendant.

He. contended, that the equity of the bill was fully de-nied by the defendant's answer; and that the plaintiff ought to have made his defence, if he had any, to the suit at law, before the referees. This court cannot award a re-hearing before the referees. If the plaintiff wanted a .dis-covery to aid him in his defence at law, he ought to have applied sooner; that he had .been guilty of gross negli-gence, and if the referees heard the cause *ex parte,* it was owing to the wilful and inexcusable default of the plaintiff, who had due and regular notice of the time and place of hearing before the referees. That this is not the case for a *set-off,* as the claim of the defendant was for uncertain and unliquidated damages, arising *ex delicto.* This court could not assess the damages. There could be no set-off here in such a case, any more than at law ; but the principles of set-off were the same at law, as in equity ; that no unliqui-dated damages could be set-off. He. cited, 1 *Johns. Ch. Rep.* 320. 432. 465. 2 *Johns. Ch. Rep.* 228. 552. 1 *Madd. Ch.* 108. 315. 3 *Atk.* 223. 1 *Caines' Rep.* 147. 3 *Vesey,* 248. 1 *Vernon,* 176. *Newland's Ch. Pr.* 100.

*J. V. Henry,* contra, contended, that this was a case of *partnership* which repelled every objection to set-off. The injunction issued before the report of the referees ; and the hearing before them was altogether *ex parte.* That in equity a set-off will be allowed, when it would not be permitted at law. That this is a case of *mutual claims,* under a *partnership* agreement, arising from the acts of the parties relative to the subject matter of the *partnership.* It is a case of *partnership account,* and the breaches of the articles of partnership must be ascertain-ed on a reference to a master, or by an issue. The un-certainty of the damages on the breaches of the partner-ship contract, is no objection to the jurisdiction of the court. *Partnership* dealings are the proper subjects of equitable interference, and a court of law will not direct an account to be taken between partners. The jurisdic-

tion of this court attached on the filing of the bill. No-
thing but gross negligence draws after it a loss, in equity.
He cited *Montague on Set-off, Append.* 68. and notes. 1
*Mad. Ch.* 75. 3 *Bos. & Pull.* 289. *Watson on Partner.* 60.
7 *East,* 353. 356. 1 *Johns. Ch. Rep.* 65. 103.

THE CHANCELLOR. The reasons which have been sug-
gested, or which have occurred to me, for retaining the in-
junction, may be arranged under the following heads :

1. That the plaintiff did not make his defence before
the referees, and that the recovery is unjust.

2. That his demands against the defendant ought to be
liquidated and admitted, by way of set-off against that re-
covery.

3. That the demands of the parties all arise out of part-
nership articles, and ought to be heard together, and adjust-
ed in this court.

1. The bill was not strictly a bill of discovery, for it had
a prayer for relief, and yet the necessity of a discovery
would seem to have been the cause and chief object of the
bill. It stated, that the plaintiff had been sued at law, and
that issue had been joined, and a reference awarded, and it
then added, that he " could not make out his defence,
nor obtain a report of the referees in his favour, from the
account of the defendant having been fraudulently with-
held, and from the facts essential to the defence and set-
off resting, in a great measure, in the knowledge of the de-
fendant, and, therefore, not to be made out but from a full
discovery of the defendant." This is the language of a
bill of discovery; and I take it for granted, that this plain
and avowed purpose was the ground of the allowance of
the injunction. But it appeared afterwards, that the bill
was filed too late for such an object, provided the discove-
ry was intended to have been used before the referees.
After a verdict at law, a party comes too late with a bill of
discovery. (*Barbone* v. *Brent,* 1 *Vern.* 176.)

After a verdict
at law, a party
comes too late
with a bill of
discovery.

1818.

DUNCAN
v.
LYON.

There is no reason assigned why the bill was not presented before the 27th of *August*, being only the day before the one for which notice of the hearing at the reference had been given. It now appears, that the referees met on the day appointed, and heard the cause in the absence of the plaintiff; and that they had made their report, and delivered it to the defendant, some hours before notice of the injunction was served. The cause (as it appears, from the answer to that part of the bill relative to the suit at law) had been at issue above a year; and the Supreme Court had, at three different terms, been applied to, in respect to the appointment of referees; and in two instances, one of the referees had been nominated by, or on behalf of the present plaintiff. The notice of the reference had also been duly given, as early as the 7th of *August*, and yet no bill was filed, or application for an injunction made, until the 27th of *August*. Here was extreme delay on the part of the plaintiff, in the exhibition of his bill, whether the object of the bill was discovery in aid of the defence at law; or whether it was for final relief here. If a party will not apply in due season to this court, and appears to have had sufficient time, and sufficient information to enable him to do it, the case stands precisely on the same ground, as if he had applied *after* the trial or reference at law.

It is a settled principle, that a party will not be aided after a trial at law, unless he can impeach the justice of the verdict or report, by facts, or on grounds of which he could not have availed himself, or was prevented from doing it, by fraud or accident, or the act of the opposite party, unmixed with negligence or fault on his part. This point has been so often ruled, that it cannot be necessary or expedient to discuss it again ; and it is one by which I

After a trial at law, or report of referees, a party cannot have the aid of this court, unless he can impeach the justice of the verdict or report, by facts, or on grounds of which he could not have availed himself, or was prevented from doing it, by fraud or accident, or the act of the opposite party, without any negligence or fault on his part.

mean to continue to be governed. In some of the cases in this court, referred to by the defendant's counsel, it was shown to be the rule of the *English* Chancery, and it appears also to have been frequently noticed and recognized in the Courts of Equity in this country. (*Marshall*, Ch. J. in *Marine Insurance Company* v. *Hodgson*, 7 *Cranch*, 336. Chancellor *Desaussure*, in *Winthrop and others* v. *Lane and others*, 3 *Desaussure's Rep.* 324, 325. *Noland* v. *Cromwell*, 4 *Munf.* 155.) If the principle was to be materially relaxed, the departure from it, as I apprehend, would soon be perceived and felt to be a great public grievance, by encouraging negligence, protracting litigation, exhausting parties, and drawing within the cognizance of this court the general review of trials at law.

There is nothing before me impeaching the justice of the report of the referees. If the suit there was in a case of which a court of law had jurisdiction, (and which point I shall presently consider,) I do not know of any ground entitling the plaintiff to the continuance of his injunction. If there be any sufficient cause for a rehearing, or for setting aside the report, he will have an opportunity of applying to the Supreme Court, which has competent powers for the purpose, as the report has not as yet been made to that court, and confirmed. I do not think I ought to assume the control of a matter of relief which has previously attached, and fitly belongs to that jurisdiction.

2. The matters of account stated in the bill were not proper subjects of set-off in the action of covenant; and if the discovery had been obtained *in season*, I presume it would not have aided the defence. The breaches assigned in the action at law were, that the plaintiff had refused to perform his part of the covenant, in furnishing timber and provisions, &c. and the demand at law was in the nature of redress for a *wrong* or *injury* committed, and not for a *debt* due. It rested entirely in uncertain and

1818.          unliquidated damages.   There cannot be a set-off even of
               a debt against the demand of the plaintiff, unless that de-
DUNCAN         mand be of such a nature that it could be set-off by a debt,
v.             if it existed in him.   There must be mutual debts.   This
LYON.
               is the settled doctrine in the courts of law.  (*Colson* v.
               *Welsh,* 1 *Esp. N. P. Rep.* 378.)   Lord *Mansfield,* said

A set-off is   in *Howlet* v. *Strickland,* (*Cowp. Rep.* 56.) that not only
not  allowed
where the de-  the statute, but *the reason of the thing,* related to mutual
mand is for un-
certain dama-  debts *only,* and that unliquidated or uncertain damages,
ges    arising
from a breach  arising from a breach of covenants, were no debts.   The
of covenant.   same doctrine was held in *Weigall* v. *Waters,* (6 *Term.*
               *Rep.*) and in *Gordon* v. *Bowne,* (2 *Johns. Rep.* 150.)

A Court of         The same rule prevails, also, in Courts of Equity.
Equity follows
the same gene- The practice may, perhaps, be more liberal in respect to
ral rules as a
court of law,  *mutual credits,* but there is no case in which a set-off has
as to set off.
               been allowed, where the demand was for uncertain dama-
               ges arising on a breach of covenant.   The courts of law
               and equity follow the same *general* doctrines on the sub-
               ject of set-off.   This appears from the opinion of Sir
               *Thomas Clarke,* in *Whitaker* v. *Rush.* (*Amb.* 407.)   The
               cases of *Ex parte Stephens,* and *Ex parte Hanson,* (14 *Ves.*
               24. 12 *Ves.* 346.) only established that under certain cir-
               cumstances, there may be a set-off, in equity, when there
               can be none at law ; and as late as the case of *Addis* v.
               *Knight,* (2 *Merivale,* 121.) it was observed by the Mas-
               ter of the Rolls, that in equity, as well as at law, a joint
               could not be set-off against a separate demand.   Until
               the statute of 2 *Geo.* II. Courts of Equity followed the
               rule of law, and would not allow mutual, unconnected
               debts to be set off.   "If they had done otherwise," said
               Lord *Mansfield,* in *Green* v. *Farmer,* (2 *Burr.* 1214.) "they
               would have stopped the course of law, in all cases where
               there was a mutual demand."   It was the observation of
               Lord *Hardwicke,* (1 *Atk.* 237.) that he did not know that a
               Court of Equity had gone further than the courts of law,
               in cases of a set-off.

The doctrine of set-off was borrowed from the doctrine of *compensation* in the civil law. Sir *Thomas Clarke* shows the analogy, in many respects, on this point, between the two systems ; and the general rules in the allowance of compensation or set-off by the civil law, as well as by the law of those countries in which that system is followed, are the same as in the *English* law. To authorzie a set-off, the debts must be between the parties, in their own right, and must be of the same kind or quality, and be clearly ascertained or liquidated. They must be certain and determinate debts. (*Dig.* 16. 2. *de Compensationibus*, *Code* 4. 31. 14. and *Code* 5. 21. 1. *Ersk. Inst.* vol. 2. 525. 527. *Pothier, Trait. des Oblig.* No. 587. to 605. *Ferriere sur Inst.* tom. 6. 110. 113.)

Courts of Equity, before the statute of *Geo.* II. (and when courts of law had no power on the subject,) have enforced a set-off, after judgment of law, where it clearly appeared to have been the *intent* of the parties, that the one demand should be set off against the other. Lord *Macclesfield*, in a strong case of this kind, (*Hawkins* v. *Freeman*, 2 *Eq. Cas. Abr.* 10. pl. 10. 8 *Viner*, 560. pl. 26.) interfered with hesitation, and put his interference on the ground of the manifest intent.

I observed that the practice might be more liberal in cases of *mutual credit*, and, for the more accurate understanding of that observation, I would refer to the case *Ex parte Deeze*, (1 *Atk.* 228.) in which it was held, by Lord *Hardwicke*, that if a man had a debt due from a bankrupt, and had, at the same time, *goods* of the bankrupt in his hands, which could not be got from him without the assistance of law or equity, the assignees ought not to take them from him, without satisfying his whole debt. Mutual credit was not to be confined to pecuniary demands, but it reached to a case like this, of goods in the hands of the creditor. This case was cited by Ch. J. *Gibbs*, in *Olive* v. *Smith*, (5 *Taunton*, 56.) as a just decision; and he observed, that this

*1818.*

DUNCAN
v.
LYON.

There must be mutual *debts* to authorize a set off.

1818

DUNCAN
v.
LYON.

case, and the doctrine in it, had always been supported. Where one party being indebted to another, intrusts that other with goods, it was a case of mutual credit; and the statute of 30 *Geo. II.* c. 5. has been carried beyond money transactions, and extended to cases of mutual trust. (4 *Term Rep.* 211.) (*a*)

If the recovery at law is to be taken, under this present motion, as a just recovery, then it would be unreasonable to delay the defendant until the accounts between the parties can be taken and stated, and the balance struck in this court. One judgment may be set off against another; but here is a demand on one side raised to a debt certain by a legal assessment, and an uncertain claim on the other, depending on a settlement of accounts. Those accounts were not the subject of set-off; and there is no case to warrant me to stay execution on the one demand, until the other is settled, and *in a condition to be set-off.* It may be a long time before the accounts between these parties can be stated, and the balance struck, and until that be done, it cannot be known even on which side the balance will fall.

The only colourable ground against the motion, that the demands on each side arise out of partnership articles; and that the cognizance of the whole case, belongs properly, if not exclusively, to this court.

But, I do not find, that even matters of account between co-partners, belong exclusively to this court, though in practice, they may be confined here. Courts of law and equity have concurrent jurisdiction in matters of account; and it is conceded, that an action of account at law may

*Equity has not an exclusive juridiction between co-partners in matters of account.*

(*n*) These are *bankrupt* cases, arising under the statute of bankruptcy, which speaks of *mutual credits.* The statute of 2 *Geo.* II. ch. 22. s. 13. which first allowed set-offs at law, speaks only of *mutual debts;* and the language of our act, previous to the late revision, was, "that if two or more persons dealing together be indebted to each other," &c. (L. N. Y. 1 K. and R. 347.) In the revised act (sess. 36. ch. 56. s. 1. 1 N. R. L. 515) the words are, "that if two or more persons dealing together be indebted to each other, *or have demands arising on contract or credit against each other.*"

be brought by one partner against another. (*Co. Litt.* 171. a. *Montague on Partnerships*, vol. 1. 45.) In that action, the auditors have all the requisite powers, for they can compel the parties to account, and to be examined under oath; and I have not been able to discern any good reason why that action has so totally fallen into disuse. (*a*) The practice, also, under the statute, of appointing referees in matters of account, is a new power given to our courts of law, and it would seem to render the cognizance of such causes much more suitable for a court of law here, than in *England.* This court has no better mode of settling accounts than by referees, and it is, in many cases, under the necessity of appointing a merchant or other skilful accountant, to assist the Master in taking and stating the accounts. Lord *Hardwicke* once said, (2 *Atk.* 144.) that the House of Lords frequently made such references in matters of account, and he thought it the most proper method in a case then before him. In *Chapman* v. *Koops,* (3 *Bos. & Pull.* 289.) the undivided interest of one partner was taken on execution, and the C. B. refused to make an order of reference to their prothonotary to take the partnership account, and the judges considered that such a step would be assuming equity jurisdiction *In that case,* and in such a collateral way, the measure proposed would have been changing the character of the court; and, doubtless, it had not the jurisdiction in the mode asked for. But if such a point had directly arisen in the action of account, no such objection could have been

1818.

DUNCAN
v.
LYON.

An action of account may be brought at law by one partner against another, and there appears to be no good reason why that action is not resorted to, instead of a bill in equity.

(*a*) Vide *Godfrey* v. *Saunders*, (3 *Wils.* 73—117.) in which Ch. J. *Wilmot* said, he was glad to see this action of account revived in that court. Some of the objections to this old common-law remedy were obviated by the stat. 4 *Ann.* ch. 16. s. 27. which allowed it between joint tenants or tenants in common, and against their executors and administrators; and the *auditors* are empowered to administer an oath, and examine the parties on oath, touching the matters in question. (1 *Selw. N. P.* 1. 1 *Bac. Abr. Accompt.*) The same provisions are to be found in our statute. (Sess. 11. ch. 4. 1 *N. R. L.* 90.)

made, and auditors would have been appointed. I be-lieve, that the action of *assumpsit* has never been carried further, between partners, than to the case of an account stated, and a promise by one of them to pay to the other the balance struck. (*Foster* v. *Allanson*, 2 *Term Rep.* 479. *Moravia* v. *Levy*, 2 *Term Rep.* 483. note.) Whether the action of *assumpsit* may not be further extended, (for it is a very liberal and remedial action,) so as to reach, and carry into effect the general powers of a court of law, of set-tling account, by referees, it is not for me to determine. It is sufficient, for the present purpose, that the defendant had a suitable action at law provided for his case, and that the action of *covenant* mentioned in the pleadings was well brought; and the cases I have referred to, in the *Term Reports*, admit, that if the parties enter into articles of copartnership within a covenant to account at stated times,

an action at law will lie upon the covenant. We meet also with the same doctrine, applied even to an action of *assumpsit*, in *Venning* v. *Leckie*, (13 *East*, 7.) That was an action of *assumpsit* on a promise in writing to take part of certain goods, bought by the plaintiff on joint ac-count, and for which they were to be equally concerned in the profit and loss. It was objected, that this was a partner-ship, and that no action lay by one partner against the other; but the court said, that there were many deeds of copartnership in which the partners covenanted each to advance a certain sum, and that an action at law would lie to enforce the covenant, though there were accounts be-tween them afterwards, which would require unravelling in equity.

These cases approach, in principle, to the one under discussion; and though the plaintiff may be entitled to go on, and have an account taken in this court, yet I see nothing to justify me in interfering in the mean time with the defendant's action at law. The motion to dissolve the injunction must be granted.

                                                     *Motion granted.*