[See Case No. 6,773.]

---

## Case No. 6,773.

### HOWE et al. v. SHEPPARD.

[2 Sumn. 409.] 1

Circuit Court, D. Maine. Oct. Term, 1836.

SET-OFF—MUTUAL CREDITS—JOINT AND SEPARATE DEBTS—PARTNERS—ASSIGNMENT OF DEBT.

1. Courts of equity follow the law in regard to matters of set-off, unless there is some intervening natural equity going beyond the statute of set-off, as where there are mutual credits between the parties, or an existing debt on one side, which constitutes the ground of a credit on the other side.

1 [Reported by Charles Sumner, Esq.]

2. Joint debts cannot be set off against separate debts, or separate debts against joint debts, either at law or in equity; as where there is a separate debt due from a partner, and a joint debt due to the partnership.

[Cited in The Zouave, 29 Fed. 298.]

[Cited in Day v. Abbott, 15 Vt. 634; Lawrence v. Vilas, 20 Wis. 391.]

3. Quaere—If in a case of mutual credits and debts in the same right, the insolvency of either party will create such an equity as to entitle the other party to a set-off against the debt of the insolvent party.

4. Semble: That a court of equity will not entertain a set-off of a separate debt of one partner against a joint debt to the partnership, upon the ground of the insolvency of that partner.

[Cited in Gordon v. Lewis, Case No. 5,614; Pierpont v. Fowle, Id. 11,152.]

[Cited in Milburn v. Guyther, 8 Gill, 96.]

5. The mere fact, that a case is in conformity with the principles of natural equity and justice is not sufficient to bring it within the jurisdiction of a court of equity. There are many principles of natural equity and justice, which are not attempted to be enforced therein.

6. Where there are mutual debts, which may be set off at law or in equity, the right of set-off is extinguished by a bona fide assignment of one of the debts.

[Cited in Wood v. Carr, Case No. 17,940.]

[Cited in Howe Mach. Co. v. Hickox, 106 Ill. 469.]

7. Howe & Howard recovered a joint judgment against Wood, in 1821; Howe, for himself, and as attorney of Howard, on the 22d of September, 1830, assigned the judgment to the United States, and Howard, on the 30th of October, 1830, surrendered all his interest therein to Howe, and authorized him to transfer and assign the same for his own benefit. Held, that there was a valid assignment of the joint judgment to the United States, and that the defendant, who was the administrator of Wood, could not set off against it a debt due by Howe alone to Wood, though Howe, ever since the debt accrued, had been insolvent.

This was an action of debt, brought by the United States, and for their sole benefit, in the name of Howe & Howard, on a judgment recovered by the said Howe & Howard against Abiel Wood, in January, 1821, which judgment the said Howe, acting for himself, and as attorney of the said Howard, on the 22d of September, A. D. 1830, assigned to the United States, and the said Howard, on the 30th of October, 1830, assigned all his interest therein to the said Howe, and authorized him to dispose of the same as he saw fit. The defendant [John H. Sheppard], on the death of the said Wood, having taken on himself the defence of the said suit, as administrator, was defaulted, and paid one moiety of debt and interest and costs, and was now heard as to the other moiety upon the following agreed statement of facts: That after the recovery of the said judgment by Howe & Howard against the said Wood, viz. in January, 1826, the said Wood fully paid and satisfied a judgment recovered in October, 1817, by Joseph Hurd, Jr., against Joseph T. Wood, Abraham F. Howe, and the said Abiel Wood, amounting to the sum of $13.-

056 damages and costs of suit, which judgment was rendered on a bond executed by the said Joseph T. Wood, as principal, and the said Abraham F. Howe, and Abiel Wood, as sureties. The said Joseph T. Wood died insolvent, leaving the said judgment wholly unsatisfied, and the said Howe has never paid the said Abiel Wood nor his said administrator any part of the said sum so paid and satisfied by the said Wood for the said Howe, and that the said Howe, from the time of the said payment to the present has been insolvent. And the said administrator now prays to have allowed to him so much of the said sum paid by the said Wood for the said Howe as aforesaid, as shall be sufficient to meet and offset one moiety of the said judgment on which the present suit is brought. And the parties agree, that if the court shall be of opinion, that the said administrator can, in law or equity, be allowed the offset aforesaid, then judgment shall be entered for the plaintiffs for costs only. But if the said sum cannot be allowed as aforesaid, then judgment is to be rendered for plaintiffs for the moiety aforesaid, with costs.

Mr. Anderson, Dist. Atty., for plaintiffs.
Mr. Sheppard, pro se.

STORY, Circuit Justice. The present suit is debt, brought against the defendant, as administrator of Abiel Wood; and it is founded on a joint judgment recovered by Howe & Howard against Wood, in January, 1821, for the sum of $4514.07, damage and costs of suit. Howe, for himself, and as attorney of Howard, on the 22d of September, 1830, assigned the judgment to the United States; and Howard, on the 30th of October of the same year, surrendered all his interest therein to Howe, and authorized him to grant, transfer, and assign the same for his own benefit. There is no doubt, therefore, that the assignment to the United States is sufficient to convey the interest both of Howe & Howard; and it seems admitted, though not expressly so stated in the agreement of the parties, that the assignment was made as collateral security for certain debts, due by Howe and others to the United States on judgment. The present action is, therefore in fact, brought for the sole benefit of the United States.

The defendant, as administrator of Wood, insists upon a right to set off a debt due by Howe to Wood, under the following circumstances. In October, 1817, one Joseph Hurd, Jr., recovered a judgment against one J. T. Wood, and Howe and Abiel Wood, for $13,056, and costs of suit, founded on a joint bond, executed by J. T. Wood as principal, and by Howe and Abiel Wood as his sureties. J. T. Wood died insolvent; and in January, 1826, Abiel Wood paid the whole judgment, Howe being then and ever since insolvent. The defendant, as admin-

istrator of Abiel Wood, insists, that the moiety of the judgment so paid by Abiel Wood is a debt due to him by Howe; which is not denied. He farther insists, that he has a right to set off that debt in the present suit. If he has such a right, either at law or in equity, then the parties agree to give him the full benefit of it in the present action.

In the first place, it seems very clear, that the debt is not a good set-off at law; for it is not within any statute of set-off. A several debt cannot be set off against a joint debt; for the debts are of different natures and in different rights. This is the established doctrine, and it is founded in reasoning entirely satisfactory. It is unnecessary to refer to the authorities at large, by which it is supported; but they will be found generally referred to in the case of Jackson v. Robinson [Case No. 7,144], and Green v. Darling [Id. 5,765]. The case of Kinnerley v. Hossack, 2 Taunt. 170, fully recognises the general doctrine, and excepts such cases only, where there is a special agreement for the set-off.

Then, how does the debt stand as a set-off in equity? The known rule in courts of equity is, that they follow the law in regard to matters of set-off, unless there is some intervening natural equity going beyond the statutes of set-off, which constitutes the general basis of set-off at law. Such a natural equity does arise, where there are mutual credits between the parties; or where there is an existing debt on one side, which constitutes the ground of a credit on the other side; or where there is an express or implied understanding, that the mutual debts shall be a satisfaction or set-off pro tanto between the parties. I advert in this general way only to the principles of courts of equity on this subject. But many of the authorities will be found collected in the learned opinions of Mr. Chancellor Kent, in Duncan v. Lyon, 3 Johns. Ch. 358, 350, and Dale v. Cooke, 4 Johns. Ch. 11, 14; and also in the Commentaries on Equity Jurisprudence (volume 2, c. 37, §§ 1430–1438). See, also, Cheetham v. Crook, McClel. & Y. 307.

Now, in the first place, in the present case there is no pretence to say, that the debt due to Wood from Howe, as surety, was a debt contracted upon the credit of the joint debt due to Howe & Howard. The former was clearly in invitum, and arose upon the payment of the judgment upon the joint bond. The debt of Wood against Howe for his contributory share of the joint judgment, was a debt created by operation of law; and arose from a compulsory payment by Wood of that judgment. The debt on which that judgment was founded, was prior in its origin (at least as far as we can see) to that due from Wood to Howe; and, therefore, the latter could not be a credit given on account of the former. It is true, that the payment was made by Wood at a later pe-

riod, viz. in 1826. But there is not the slightest proof, that the parties ever agreed to consider it a set-off to the joint debt, or that the payment was a credit in contemplation of the joint debt. So that, there is a total absence of all circumstances to raise any presumption, that this was a case of mutual credit, or of an agreement for a set-off; and, in this view, cadit questio.

Again. This is the case of an attempt to set off a several debt of one partner against a joint debt due to the partnership. Now, neither at law, nor in equity, can such a set-off be maintained upon that mere footing. The partnership was not liable for the separate debt of one of the partners; nor bound to contribute towards its payment. There is no equity to compel a partnership to pay the separate debts of a partner, founded upon the mere fact of that relation. On the contrary, the doctrine is just as clear in equity, as at law, that joint debts cannot be set off against separate debts, or separate debts against joint debts; for they accrue in different rights. The authorities to this point are abundantly clear (see 2 Story, Comm. c. 37, § 1437; Vulliamy v. Noble, 3 Mer. 617; Whitaker v. Rush, 1 Amb. 407); and they are ably summed up in the cases of Duncan v. Lyon and Dale v. Cooke, already referred to. There must be some other circumstances creating an equity, in order to justify the set-off.

But, then, it is said, that here Howe is, and was insolvent at the time of the payment of the joint judgment by Wood, and that of itself creates an equity for a set-off. Whether, in a case of mutual debts in the same right, as for example, mutual joint debts, or mutual separate debts, the insolvency of either party will entitle the other to set off his debt against the debt of the insolvent party, without any other intervening equity, is a point not necessary here to be discussed or decided. Natural equity would seem persuasively to urge such a set-off in such a case; for otherwise the insolvent party might recover his whole debt; and the other party might recover a dividend only, or indeed nothing. Yet there is great reason to doubt, even in such a case, whether the courts of equity in England ever admitted a set-off founded upon the mere fact of insolvency. In Ex parte Prescot, 1 Atk. 231, Lord Hardwicke affirmed the contrary; and said, that in cases of bankruptcy, before the statute of 5 Geo. II. c. 30, if there were eventual debts, the creditor could not set off the debt due to him against the debt due from him to the bankrupt, even in equity. But, in the case of a joint debt, the same reasoning could not apply in favor of the set-off of the separate debt of one of the partners; at least not, until all the joint debts were paid, and all the equities of the other partner were satisfied. For it is a general rule, that no partner has any separate interest, except in the surplus of the partnership property after the payment of all the joint debts and other equities. If there should be such a surplus, then, perhaps, the same rule might be applied, as in cases of mutual separate debts. So Lord Cowper held in Lord Lanesborough v. Jones, 1 P. Wms. 325, where his lordship said: "If A. and B. are joint traders, and J. S. owes A. and B. on their joint account £100, and A. owes the said J. S. £100 on his separate account, J. S. cannot deduct so much as A.'s proportion of the £100 comes to, out of the joint debt; for that the co-partnership debts of A. and B. are to be first paid before any of the separate debts. But, if there be a surplus beyond what will pay the partnership debts, then out of A.'s share of the surplus, J. S. may deduct the separate debt of A." Lord Hardwicke, in Ex parte Edwards, 1 Atk. 100, appears to have been swayed by the same reasoning, as was Lord Loughborough in Ex parte Quintin, 3 Ves. 248. In Ex parte Twogood, 11 Ves. 517, Lord Eldon appears not satisfied with these latter decisions; and Sir Wm. Grant, in Addis v. Knight, 2 Mer. 117, approved Lord Eldon's doctrine. Mr. Chancellor Kent has also given the weight of his own authority on the same side, in Dale v. Cooke, 4 Johns. Ch. 11, 14. The strong inclination of my mind is, that, according to the present course of decisions, courts of equity in England will not entertain a set-off of a separate debt of one partner against a joint debt due to the partnership, upon the mere ground of the insolvency of that partner: for it must necessarily involve a settlement of all the partnership debts, and an ascertainment of all the partnership equities, before any relief can be given. That was manifestly the opinion of Lord Hardwicke in Ex parte Prescot, 1 Atk. 231; and it seems confirmed by the opinion of the same learned judge, in Bishop v. Church, 3 Atk. 691, and by Lord Eldon, in Ex parte Twogood, 11 Ves. 517. I am aware that the case of Simson v. Hart, 14 Johns. 63, is apparently the other way, and affirms, that insolvency does, or may constitute a sufficient equity to entitle a party, who is a creditor upon a joint judgment, to set off that judgment against a separate judgment debt due by him to one of the joint judgment debtors, both of the latter being insolvent. The ground of the decision seems to have been, that the party having the joint judgment, and who applied for the relief, had the sole interest in that judgment, and might urge it against either of the joint judgment debtors; and therefore might set it off against the separate debt of either, to prevent a manifest and unconscionable injury, which he might otherwise sustain. That ground would not apply in the present case; for here, Howe & Howard had a joint interest in the judgment in their favor; and Howe alone could not insist upon a right to apply it, without the consent of Howard, in discharge of his own separate debt, as the

judgment was a joint security for the benefit of both partners. To bring the present case within the range of the principles in Simson v. Hart, it should appear, either that Howe was the sole owner of the joint judgment at the time, when the set-off was claimed, or that both Howe & Howard then assented to an allowance of the set-off.

The decision in Simson v. Hart, 14 Johns. 63, carries with it the appearance of being in conformity to the principles of natural equity and justice. But this alone is not sufficient to bring the case within the jurisdiction of courts of equity for relief; since there are many principles of natural equity and justice, which are not attempted to be enforced therein. I have not been able to satisfy my own mind, that any such general principle of relief, by way of set-off, has been administered in courts of equity, founded upon the mere insolvency of the party, as that case supposes. On the contrary, after no inconsiderable research, I felt myself compelled to come to a very different (though not to an opposite) conclusion, in Green v. Darling [Case No. 5,765]. My subsequent researches, which have been more extensive, have not enabled me to detect any error in that opinion, or to find in English jurisprudence a single decision, which countenances any such equity for a set-off. In the elaborate judgments of Mr. Chancellor Kent, where the subject has several times undergone a very full review, both of principles and authorities, there is a total silence on the same point. Still, however, I desire not to be concluded on that point, as this cause may well be disposed of, without resting at all upon that ground.

In the present case, the right of set-off could not exist against Howe and Howard, so long as the latter possessed any interest in the judgment. When that judgment was assigned to the United States, the latter were clothed with all the rights and interests of the partnership, provided the assignment made by Howe in his own name and in Howard's name was an operative conveyance as to both; that is, provided Howe had authority from Howard, to make the assignment. That he was without such an authority, is no where asserted in the statement of facts, and is not to be presumed; and the subsequent paper executed by Howard to Howe, relinquishing all interest in this judgment, and authorizing Howe to transfer it for his own benefit, would seem to amount to strong proof of a prior authority, given by Howard, or of a subsequent ratification of the assignment by him. In either view, it would bind both Howe and Howard. And even if it were invalid as to Howard's interest, it was a good assignment of Howe's interest in the judgment, and bound him in equity to procure a relinquishment of Howard's share, which he subsequently did obtain; and so, as to Howe, in the final event, the whole judgment became vested by assignment in the United States.

Now, upon this posture of the case, it seems to me very clear, that the right of set-off on the part of Wood is gone, or rather never had any real existence. That right was not an equity, attached to the original judgment of Howe and Howard. It was a right, which at most could be asserted against Howe only, when he should become the exclusive owner in law or equity of that judgment, and while he was so owner. The assignment of that judgment to the United States extinguished all the legal and equitable interest of Howe as well as of Howard in it; and the United States became bona fide purchasers of it, for a valuable consideration. The equity of the United States, then, is both prior in point of time, and better in point of right than that of Wood, in regard to the judgment. Where there are mutual debts, which may be set off in law or in equity, I take it to be clear, that the right of set-off is extinguished by a bona fide assignment of one of the debts. In the present case, from the statement of facts I cannot find, that there ever was a moment, in which Howe was the exclusive owner of the joint judgment; and unless he was, there never could, according to the principles already stated, exist a right in Wood to set off his separate debt against the joint judgment at law or in equity. It seems to me, therefore, that, according to the agreement of the parties, the plaintiffs are entitled to judgment.