## Case No. 4,197.

DURYEE v. ELKINS.

[Abb. Adm. 529.][1]

District Court, S. D. New York. April, 1849.

---

[1] [Reported by Abbott Brothers.]

Alanson Nash, for libellant.

E. C. Benedict, for respondent.

BETTS, District Judge. A question of practical importance arises upon the face of these pleadings; that is, whether an admiralty court can take jurisdiction of a claim of a seaman for a share of the proceeds of a fishing or whaling voyage, before the accounts of such voyage are made up; in other words, whether the court can bring the parties to an accounting, and, by its decree, adjust their respective rights in the adventure.

When the voyage is made up, admiralty courts will take cognizance of suits by seamen for their respective shares of the aggregate. The Sidney Cove, 2 Dod. 11. In a whaling voyage the account may be referred to a commissioner, to see that the computation is correct, or that no improper items are inserted against the crew. Reed v. Hussey [Case No. 11,646].[2] That is done, however, not on the ground of an original authority to compel the account, but regarding the voyage made up as an admission of the sum to be distributed to the ship's company, each seaman can have his remedy in this court for his aliquot part thereof, and may claim the aid of the court to protect him against overcharges. The same principle would extend to the case where the proceeds of the voyage are realized by the owner, and

he refuses or neglects to make up the voyage, or holds the takings of the adventure in his possession at the home port an unreasonable length of time without sale. In such case the court may equitably regard him as appropriating the cargo to himself; and adopting the price received as the market value, may award to the seamen their compensation on that footing. The seamen may thus be permitted to claim their proportionate part of the entire value in the hands of the owner, throwing on him the burden of proving the charges and deductions to which it is subject under the shipping articles.

The case of Reed v. Hussey was one of wreck, where portions of the oil were saved and transmitted to this port and sold, a small parcel having been previously remitted home and sold during the continuance of the whaling voyage, and the voyage was made up by the owner on the footing of such net receipts. To that extent, the remedy of the sailor was allowed in this court.

The libellant does not proceed for an acknowledged or proved account of takings come to the defendant's possession, but demands an original and full accounting for the whole voyage. In this respect the case differs from that above referred to, which occurred in this court. If the libel had set up a specific amount realized by the defendant as the earnings of the voyage, and the libellant had then claimed an entire one hundred and ninetieth or two hundredth part of the gross sum, I cannot perceive any objection to the jurisdiction of the court over the case as thus shaped, or to its competency to try and decide the case, so as to preserve all legal rights to all parties. The defendant might be required then to justify the charges claimed by him as a satisfaction of the libellant's share, and the office of the court would be no more than to examine and adjudicate upon the credit so claimed.[3]

The case made by the libellant, however, rests upon the assumption that he is entitled to have the accounts at large stated in this court, and to be secured the value of the takings irrespective of the method of disposition adopted by the master or owners, or the actual amount realized. It would be his right undoubtedly, in equity, to overhaul all the proceedings of the master and owner, and to compel them to secure him the entire value of his earnings according to the terms of his shipping agreement, and that without regard to the method of adjustment stipulated by the articles, if he could establish any unjust or inequitable conduct on the part of the owner or his agents, in disposing of the takings of the voyage or in making up the accounts.

But can this be done by a court of admiralty? As a general principle that court does

[2] This case was affirmed on appeal to the circuit court, December, 1837 [not reported].

[3] Compare The Atlantic, Case No. 620.

not take cognizance of partnership transactions, nor of any method of securing to a seaman compensation for his services, excepting on an agreement express or implied for the payment of wages. And thus all extraordinary arrangements, such as those secured by deed (Howe v. Nappier, 4 Burrows, 1944; Campion v. Nicholas, 1 Strange, 405; Opy v. Child, 1 Salk. 31; Day v. Seirl, 2 Barnard. 419, 2 Strange. 969), or those contemplating a participation of profits (The Sydney Cove, 2 Dod. 11; The Mona, 1 W. Rob. Adm. 137; The Riby Grove, 2 W. Rob. Adm. 52), are by the English law excluded from that class of contracts on which seamen are privileged to sue in admiralty (Abb. Shipp. 659).

The rule in the courts of this country has not been so restrictive upon the remedies of seamen (Macomber v. Thompson [Case No. 8,919]; The Crusader [Case No. 3,456]), the courts being inclined to regard only the fact that the agreement was or was not intended to secure to the seaman wages for his services. If that is the purpose, it may be enforced in admiralty, although the wages were to arise out of a participation in the earnings of a freighting or fishing voyage, or although they were secured by a bond or other specialty. It is accordingly the common usage of the courts of the United States to entertain libels for shares or proportions of earnings in fishing voyages, such shares being the measure of the amount of wages. A suit in admiralty or at law may be maintained for such shares when ascertained by a final settlement of the voyage. 3 Pick. 435.

In principle, there is no distinction between a suit in personam in admiralty and a common-law action for the recovery of wages. The same ingredients enter into the rights of both parties in each tribunal. The demand rests upon an agreement express or implied, and is enforced according to the methods of procedure of the respective courts.

Thus an action lies at law by a seaman to recover his proportionate share of a whaling adventure, after the oil has been sold, and the amount liquidated out of which the share is to be completed. Wilkinson v. Frasier, 4 Esp. 182. That doctrine has always been adopted in this court, and numerous suits and recoveries have been had on libels so filed after the whaling voyage was made up.

There is no difficulty in furnishing the remedy when the materials are supplied from which the right is shown or may be deduced. The relief by suit in admiralty proceeds upon the same doctrine and like proofs as in the common-law action of assumpsit.

Do the functions of the court admit of its managing an action of account either according to the common-law practice, or under that of a court of equity?

The ancient common-law action of account

is rarely used at this day. It was applicable to transactions between a lord and his bailiff, a man and his receiver, between partners and against administrators, &c. Finch, N. B. 116; Co. Litt. 172; 1 Bac. Abr. tit. "Account;" 2 Rev. St. 50, 306; Duncan v. Lyon, 3 Johns. Ch. 360. The action may be barred by plea that defendant has accounted. Baker v. Biddle [Case No. 764]. The action was founded on contract, and it was necessary that all parties should be joined in it, and that the defendants should have no claim in the thing to be accounted for. 1 Dane, Abr. 164.

The auditors or referees can examine all parties on oath, and accordingly the proceedings in the action at law are of the same character and of similar efficacy with those in equity. Duncan v. Lyon, 3 Johns. Ch. 360; Mitchell v. Great Works Milling & Manuf'g Co. [Case No. 9,662].

In this court, no other examination of parties can be had than by propounding interrogatories to be answered by them in connection with the pleadings. There is no usage or practice authorizing a referee or commissioner to call a party before him for an oral examination; and accordingly, if an admiralty suit embraced all the parties necessary to a full and proper accounting, there would be wanting, in order to carry it fully into effect, that essential attribute of the proceedings at law and in equity.

For that reason, it has been explicitly decided in this court, that a suit in rem will not lie in a case where an accounting is required and must be decreed. The Fairplay [Case No. 4,615][4]

The jurisdiction was interdicted in England "in accounts betwixt merchant and merchant or their factors" (Dunl. Adm. Pr. 16); and although in The Fairplay, the court withheld the expression of any opinion as to the right to sue in personam to compel an accounting, yet the reason of the decision applies with equal force to either form of action. The difference between the two, relates mainly to the greater inconvenience of keeping property on attachment pending an accounting, than that of subjecting a party to give bail.

In the case of The Fairplay, the master had chartered the vessel, and the libellant engaged to run her with him a period of five months, upon an agreement to share with the master one half of her earnings and profits. The other half was to be paid to the owner. No account had been stated between the parties. The libellant alleged there was due him the sum of $305.81 as his share of the earnings and profits. The answer denied the debt, and averred that the libellant stood indebted upon the adventure in the sum of $139.60. The decision went upon the general doctrine that this court would not entertain an action for an account, laying stress upon the fact as a corroborative reason, that the vessel

---

[4] This case was affirmed on appeal to the circuit court, in July, 1830 [not reported].

must be held in custody pending such accounting.

A whaling adventure is not regarded in our law as a partnership connection, but, as between the owner and crew, a trust is created and the right of the crew to compensation is, by the shipping agreement, usually·made consequent to the acts of the trustee. A court of equity can no·doubt secure the rights of a whaling crew independent of the method arranged and agreed between the parties, when the neglect or misconduct of the crew interposes any impediment to legal relief.

But is this within the powers of courts of admiralty proceeding in personam? They are clearly controlled by the shipping agreement in the remedy they administer, provided that agreement is valid. In the present case, the engagement in the articles is by the owner (on the fulfilment of the conditions stipulated by the crew) "to pay the shares of the net proceeds of all that shall· be obtained by the crew during said voyage, as soon after· the return of the voyage as the oil, or whatever else may be obtained, can be sold, and the voyage made up by the owner or agent of said ship, first deducting all such sums as may be due from them to the owner or officers thereof, for advances, supplies, or debts arising from other considerations." The libel charges that the defendant refuses to give the libellant an account of the voyage or pay him his dues, and prays the court to decree that the defendant come to a just, reasonable, and equitable accounting with him, of and concerning his share or lay of said voyage, and pay him whatever balance may be found on such accounting. It is true he claims general damages to $300, but he does not aver that such amount is due him on the account, nor that any specific sum whatever has come to the respondent from the takings of the voyage.

The difficulty thus presented is not obviated by the answer, and it is manifest that the relief the pleading seeks, and the only one to which it is adapted, is that of an original accounting upon all the particulars of the voyage. The counsel for the libellant maintained this view of the case in his argument, and strenuously presses the right of his client to such account, and the necessity of its being decreed him.

In my judgment, the case as brought before the court is not one of which it can take cognizance. The appropriate relief would be a bill in equity, setting forth the amount of takings, and requiring the respondent to account for their disposition.

If, however, the libellant elects to go upon the account set forth by the answer, a reference may be taken to a commissioner to ascertain and adjust the amount of payments properly chargeable to the libellant, and report whether any balance is due him out of the lay of $117.75, credited him on the account made up by the defendant.

Decree accordingly.