## HEWITT *vs.* KUHL.

1. That a plaintiff in a suit at law to recover moneys due upon certain notes and checks, has assigned for full value a mortgage given to him by the defendant in that suit, and intended as collateral security merely, furnishes no ground for injunction to restrain the prosecution of the suit. The assignment would be a payment *pro tanto*, of which such defendant might avail himself in the suit at law.

2. To maintain an equitable offset the party seeking the benefit of it must show some equitable ground for being protected against his adversary's demand. The mere existence of a counter demand is not enough. Nor will the mere pendency of an account, out of which a cross demand may arise, confer the right to an equitable offset.

3. In a suit seeking an equitable offset upon an account between former partners and an injunction to restrain a suit at law by the defendant against the complainant upon notes given in course of partnership transactions, the mere assertion of a counter demand will not hold the injunction issued upon filing the bill. Some account must be given, or statement made, or facts alleged, from which the court can judge whether the complainant would probably be able to establish his claim.

On motion to dissolve injunction.

*Mr. A. V. Van Fleet* and *Mr. G. A. Allen,* for the motion.

*Messrs. Berry & Lupton,* contra.

THE CHANCELLOR.

The bill is filed for an injunction to restrain the defendant from prosecuting two suits at law, brought by him in the Supreme Court of this state. One of them is against the complainant and Augustus B. Smith and Jacob L. Martin, upon a promissory note for $250, dated December 10th, 1869, made by Smith and Martin, as partners, to the order of the complainant, and by him endorsed to the defendant, and two bank checks drawn by Smith and Martin, as partners, on the Union National Bank of Rahway, payable to the order of the complainant, and by him endorsed to the

defendant, one dated December 24th, 1869, for $4000, and the other dated December 30th, 1869, for $2200. The other suit is against the complainant alone, and is brought to recover the amount claimed to be due on two bank checks, drawn by the complainant on the bank above named, and dated December 20th, 1869, payable to the order of the defendant, one for $1000, and the other for $500. The bill also prays an account of certain transactions in which the complainant and defendant were interested, each being entitled, according to their agreement, to half the profits thereof. These transactions were the purchase of certain timber lands in this state, the cutting off and selling the timber, and then selling the land. It appears by the answer that they included also the purchase of certain standing hickory trees, felling them, and selling the wood, and the purchase and sale of a considerable number of spokes. Some of the land referred to was purchased by the defendant, and the rest was claimed by the complainant as his property. The bill alleges that soon after the arrangement for the business was made between the parties, the complainant gave the defendant a mortgage, made by the former, on certain real estate belonging to him, in the city of Elizabeth, in this state, for the sum of $2000; that that mortgage was intended and understood to be collateral security merely for any indebtedness of the complainant to the defendant, which might thereafter accrue; that the defendant has assigned it away for its full value; and that after the giving of the checks and note in suit, the complainant, who then had the management of the business, remitted to the defendant, with a view of paying off his indebtedness, "divers large sums of money, amounting in the aggregate to many thousands of dollars, and greatly exceeding the proportion to which the defendant was entitled for his share of the profits." The bill may be regarded as claiming, (although it does not formally do so,) an allowance upon that indebtedness of the amount of the mortgage, and of the excess of the last mentioned payments over the defendant's share of the profits.

On filing the bill an injunction was issued. The defendant has answered, and now moves to dissolve the injunction on bill and answer, and affidavits.

The view I take of the case renders it unnecessary to consider the question raised on the argument, as to the nature of the business relation of the parties toward each other, whether they were partners *inter sese* or not. They agree as to the character of the transactions, that they were jointly interested in them, and as to the extent of their respective interests. It is also undisputed that no final settlement has been made between them. Nor is any question made as to the defendant's right to recover from the complainant the amount of the checks and note in suit, but for the allowances claimed in respect to the mortgage and remittances before referred to. As to the former it is enough to say that the answer denies that it has been assigned for value, but alleges that it was assigned to a creditor of the defendant as collateral security for a precedent debt, and that by reason of the large amount of prior encumbrances on the mortgaged premises it is of no value. But if the allegation of the bill were true that it has been assigned by the defendant for its full value, the complainant might avail himself of the fact in the suits at law. It would be a payment *pro tanto*.

The remaining equity depends on a claim of equitable offset. Beyond the general statement, that with a view to the payment of the claims now in suit, the complainant remitted to the defendant, out of the proceeds of the business, "large sums, amounting in the aggregate to many thousands of dollars, and greatly exceeding the proportion to which the defendant was entitled for his share of the profits," there is nothing in the bill on which this claim of equitable offset is based, and even this meagre and indefinite statement is not verified except by the complainant's general affidavit to the truth of his acts set forth in the bill. To maintain an equitable offset, the party seeking the benefit of it must show some equitable ground for being protected against his adversary's demand. The mere existence of a counter demand is

obviously not enough. Nor will the mere pendency of an account, out of which a cross demand may arise, confer the right to an equitable offset. *Rawson* v. *Samuel*, 1 *Cr. & Ph.* 179; *Wartnaby* v. *Shuttleworth*, 1 *Jur.* 469; *Dodd* v. *Lydall*, 1 *Hare* 337; *Gordon* v. *Pym*, 3 *Hare* 223; *Duncan* v. *Lyon*, 3 *Johns. Ch.* 351, 358; *High on Inj.*, § 142; *Kerr on Inj.* 66.

I find nothing in this bill to warrant me in restraining the defendant from proceeding to recover his claims at law. The complainant does not even state his belief that on the accounting for which he prays, there will be a balance found in his favor. And if he had not only so stated, but had sworn to it also, this would not, of itself, have been sufficient ground on which to hold the injunction, for it would still have been but the simple assertion of a counter demand, as to the probable merits of which the court is entirely in the dark. No account is given, no statement made, nor any facts alleged from which the court could even judge whether the complainant would probably be able to establish his claim. The statements of the bill in this connection are, except as to the amount alleged to have been received on the transfer of the mortgage, (and this is wholly denied by the answer,) a mere assertion of the existence of a counter demand, without particulars, and without statement or even conjecture as to the amount.

On the other hand, the defendant denies that anything would be found to be due from him to the complainant on an accounting, but alleges, that on the contrary, the balance would be largely in his favor.

The injunction must be dissolved with costs.