SIMPSON *against* J. HART.

Judgments, not only in the same court, but in different courts, may be *set off* against each other, at law; and the powers, of courts of law, in allowing such *set-off*, does not depend upon statute, but on the general jurisdiction of the court over its suitors.

Where a party applied, in the first instance, to a court of law, to allow the set-off, and that court, after a full consideration of all the circumstances of the case, refused to allow it, this court refused to sustain a bill filed for an injunction and a set-off.

A decision of a court of competent jurisdiction, being *res judicata*, is conclusive and binding on all other courts of concurrent jurisdiction.

THE bill stated, that the plaintiff recovered judgment in the mayor's court of the city of *New-York*, in *December*, 1813, against the defendant, and *E. Hart*, for 4,585 dollars and 43 cents, damages, for certain assaults and batteries; that, afterwards, in the same term, the defendant, *J. Hart*, recovered judgment against the plaintiff for 500 dollars damages for certain assaults and batteries; that on the 8th of *January* last, the plaintiff obtained an order to stay proceedings in the said causes, and applied, on due notice, to the mayor's court to have the damages in the last-mentioned cause *deducte*d from the damages recovered in the first cause, on an affidavit, stating the existence of several unsatisfied judgments against the defendant, prior in date to the judgment obtained by the plaintiff against him and *E. Hart*, on one of which the execution was returned *nulla bona*; that the motion to the mayor's court, to allow the deduction by way of set-off, was denied; that several unsatisfied judgments, against *E. Hart*, now exist, prior in date to that of the plaintiff, and that the present defendant is now in prison on a *ca. sa.* The plaintiff prayed for an injunction, to stay proceedings in the cause of the defendant against him; (which was granted;) and that so much of his judgment might be *set off* against the defendant's judgment.

The *answer* admitted the substance of the facts stated in the bill, and added, that the *recorder*, on the motion for a set-*off* in the mayor's court, with a full knowledge of all the facts that appeared in evidence on the trial, and after considering all the legal and equitable reasons arising out of the case, denied the motion. The defendant admitted the judgments against him, as alleged, and that he was in prison ; and that judgments were existing, as alleged, against *E. Hart*, his father, but said that they had been entirely, or in great part, paid off ; and that he did not believe that *E. Hart* was insolvent.

*Wilkins*, for the defendant, now moved to dissolve the injunction staying the defendant's execution at law. He cited 2 *Black. Rep.* 869.

*T. A. Emmet, Colden,* and *Riker,* contra. They contended that the bill set out facts not before the court below, viz. the *insolvency* of the defendants ; that the decision in the court below was not, therefore, in the legal and technical sense, *res judicata.* If the plaintiff had no remedy in this court, the decision of the court below would be conclusive, and without appeal. Now, it would be dangerous and oppressive to permit every county court to exercise *equitable powers,* in matters of set-off, without appeal. A summary decision on a motion, in this way, was not that *res judicata* which could be pleaded in bar. They cited 2 *Wash. Rep.* 36. 255. 260. *Prec. in Ch.* 233. *Vent.* 351, 352. 1 *Ves.* 323. 326. 13 *Ves.* 180. 2 *Vern.* 146, 147. 2 *Esp. Rep.* 627. 3 *Bl. Com.* 388. 1 *Burr.* 394. 2 *Atk.* 603. *Cooper's Eq. Pl.* 267. 269. 5 *Ves.* 610. 614, 615, 616, 617. 2 *Caines' Rep.* 40—51. 56. 7 *Term Rep.* 455. 7 *Ves.* 14, 15, 19. 21. *Finch's Rep.* 472. *Vaulx* v. *Sherry and others.*

*Harison*, in reply, contended, that courts of common law exercised the equitable power of setting off judgments, long

before the statutes, and before our revolution. It was a power inherent in the courts of law, from the reason and ustice of the thing. The case of *Vaulx* v. *Sherry*, was anomalous, and the cases cited from *Virginia*, consider it as founded on a *refusal* of justice at law. There is no precedent for such a power in a court of chancery, as is now claimed. Anciently, it is true, there were instances of a court of chancery relieving against an oppressive verdict; but that practice ceased as soon as courts of law became more liberal in granting new trials. Courts of chancery now refuse to interfere, because the parties have complete remedy at law.

If the plaintiff had applied to this court, in the first instance, his bill would have been sustained; but he elected a court of law, and having made his election, he must be bound by the judgment of that court. There is no new equity in this case. (1 *Johns. Cas.* 436.) In *Lechmere* v. *Hawkins*, (2 *Esp. Cas.* 627.,) Lord *Kenyon* meant no more than that, if the party could not be relieved in a court of law, he might seek relief in a court of equity. So, in the present case, if the *recorder* had refused the application, as not within the jurisdiction of the mayor's court, the party might apply here.

THE CHANCELLOR. This is a motion to dissolve the injunction, and it necessarily involves the consideration of the main question arising upon the pleadings, viz. whether, after the decision in the mayor's court, disallowing the set-off, this court ought now to interfere, and direct the judgment obtained by the defendant to be deducted from the amount of the judgment obtained by the plaintiff against the defendandt and his father, *Ephraim Hart.*

It is admitted that the question of the set-off was raised in the mayor's court, upon the motion of the plaintiff, and that, upon a consideration " of all the legal and equitable reasons" arising out of the case, the motion was denied.

1814.

SIMPSON
v.
HART.

There are no additional facts stated in the bill, and confessed by the answer, which can materially affect the merits of the question.   The prior judgments against *Ephraim Hart*, were not shown on the application in the mayor's court, though the party had it in his power to have done it; but the exist-ence of these judgments, when shown, does not afford any new and *distinct* ground for equitable relief, since they only form an additional *item* of testimony, going to the same point with that before introduced, and which was the insecurity of the plaintiff's debt.   We have then, here, the same ques-tion, resting on the same principles, as the one considered and decided in the mayor's court; and it is certain that the mayor's court had competent jurisdiction over it.

In *Barker* v. *Braham*, (2 *Black. Rep.* 869.,) decided some time before our revolution, the *English* court of C. B. per-mitted a judgment of the K. B. to set off against a judg-ment in the C. B., so as to narrow the execution to the balance.   That case admitted and sanctioned the equi-table and salutary jurisdiction of the courts of common law, in cases beyond the letter of the statutes of 2 & 8 *G.* *II.*   Subsequent cases, in the *English* courts, have confirm-ed this doctrine, and carried it into effect.   It has been ob-served, that the power of setting off judgments, not only of the same, but of different courts, did not depend upon the statutes of set-off, but upon the general jurisdiction of the court over its suitors, and that it was an equitable jurisdiction, and frequently exercised. (*Montagu on Set-offs*, 6.    *Mit-chill* v. *Oldfield*, 4 *Term*, 123.    *Glaister* v. *Hewer*, 8 *Term*, 69.)   The same principle has been often recognised, and acted upon, by the supreme court of this state. (3 *Caines*, 190.    1 *Johns. Rep.* 144.    3 *Johns. Rep.* 247.) It is very clear, then, from these authorities, that the mayor's court had a full, established, and rightful cognizance of the relief sought by the present bill; and it must have been exercised according to the impression which that court re-ceived of the justice and equity of the case.

The plaintiff elected to seek his relief in the mayor's court, upon the very point now raised by the bill  He had his choice, whether to apply to that court, or to this, in the first instance.   That court had concurrent equitable cognizance of the question, and this court is now, in effect, called upon to review the case, when it has, confessedly, no such appellate jurisdiction.   The general principle is, that the decision of a court of competent authority, or a *res judicata*, is binding and conclusive upon all other courts of concurrent power.   It is a principle, which pervades not only our own, but all other systems of jurisprudence, and has become a rule of universal law, and is founded in the soundest policy. (*Dig.* 44. 2. & Voet. ibid. *Kaims' Equity*, vol. 2. 367.) It springs from that *comity* which is due from one court of concurrent jurisdiction, in the given case, to another; and from the necessity of putting an end to litigations which have been once heard and decided, and of preserving mutual harmony, respect, and confidence between the several tribunals concerned in the same administration of justice.   These considerations have struck my mind with great force, and I have been induced to examine the cases which have been supposed to intimate a different doctrine.   In the long course of judicial decisions, cases will sometimes appear, which seem, at first sight, to contravene the best settled rules. This arises as often from imperfect and inaccurate reports of cases, as from any other cause.   But, on this subject, I find no modern case, in which chancery has taken cognizance, on the same grounds, of the very point which another court, of competent authority in the case, has considered and decided.   Whenever the bill has been sustained, it has always been upon some new matter of equity, not arising in the former case, or for some relief, to which the powers of the court of law were not fully and effectually adequate.   Thus, in the *annuity* case, on which much stress was laid by the plaintiff's counsel, (*Bremley* v. *Holland, 5 Ves.* 610.,) it was urged, that the application at law, had been merely upon

1814.  the manner upon which the consideration was paid, and had
SIMPSON  no reference to the new and clear objection then raised.
v.  It was further observed, that the summary application to a
HART.  court of law, was given, by the statute, in specified cases
only, and that it was not intended to shield the grantee from
another application, on different grounds ; in short, that
the K. B. could not exercise the jurisdiction prayed for by
the bill. The *Master of the Rolls* pursued in the same train of
remark in giving his opinion, and observed, that the plain-
tiff was not to avail himself of any objection that was the
ground of application to the K. B., and that the bill sought
to set aside the annuity, not on the ground on which the
K. B. was called on. It was, doubtless, for these reasons
that the Lord Chancellor, when the case came, afterwards,
before him, on appeal, (7 *Ves.* 3.,) said that he had laid out
of the case the applications to the K. B.

As to the *dictum* of Lord *Keynon*, in *Lochmere* v. *Haw-
kins*, (2 *Esp. Rep.* 626.,) it may want some explanation, but,
as it stands, it does not appear to touch the point before us.
It does not apply to the case where a court of law, having
equitable jurisdiction in the case, *had actually exercised it*,
and the unsuccessful party had resorted to chancery for re-
lief; but it was only applicable to a case in which a court of
law would not, or could not, assume cognizance of the matter
of defence. Nor do the *dicta* of Lord *Hardwicke* and
Lord *Thurlow*, (1 *Ves.* 327. 7 *Ves.* 19.,) which were also
cited upon the argument, amount to any thing more than the
general remark, that the jurisdiction of courts of law, over
the case of *proferts* of lost deeds, and of the consideration of
a deed, and of accounts, does not destroy the ancient juris-
diction of chancery in matters of that kind. But *dicta* are
never to be relied on when repugnant to established princi-
ples, and nothing would be more dangerous to the law, as a
science, than to set up loose, extra-judicial sayings, as a just
ground of decision. The case of *Hart* v. *Lovelace*, (6
*Term Rep.* 471.,) shows, in a more authentic shape, the real

opinion of Lord *Kenyon*, on the effect of the exercise of concurrent powers.  That was also a case respecting a memorial under the annuity act, and it had been before the court of chancery.  This induced Lord *Kenyon* to remark, that he had " some difficulty in his mind respecting the decree in chancery; that if the question had been brought before that court, and had received a judicial decision, he should have thought himself bound by it, as being the judgment of a court having competent jurisdiction over the subject matter.  But the proceedings there were *diverso intuitu;* this suit had a different object in view, and the question before the K. B. did not arise in that court."  The other judges expressed themselves to the same effect.

Before courts of law were in the exercise of their present liberal jurisdiction over the subject of new trials, the parties were frequently forced into equity, to be relieved from oppressive verdicts.  (3 *Black. Com.* 388.  *Vaulx* v. *Shelley, Rep. temp. Finch,* 472.)  Since, however, that jurisdiction has been well established, and freely exercised, on equitable, as well as legal grounds, the party failing in his application at law for a new trial, will not be relieved in equity, at least, upon the same merits already discussed, and fully within the discretion of a court of law.  Where courts of law and equity have concurrent jurisdiction over a question, and it receives a decision at law, equity can no more re-examine it than the courts of law, in a similar case, could re-examine a decree of the court of chancery.  In the case of *Bateman* v. *Willoe,* (1 *Schoales & Lefroy,* 201.) we have the opinion and decision of so high and respectable an authority as Lord *Redesdale,* on the subject now under consideration.  A verdict was obtained, at law, against the plaintiff, which he considered unjust, and having failed in his application for a new trial, on account of a defective notice of the motion, he sought relief in equity; but the bill was dismissed, and Lord *Redesdale* said, that he could not find any ground whatever for a court of equity to interfere, because

a party had not brought evidence which was in his power at the trial, or because he had neglected to apply, in due time, for a new trial. " There are cases," he observed, " cognizable at law, and also in equity, and of which cognizance cannot be effectually taken at law, and, therefore, equity does sometimes interfere ; so, where a verdict has been obtained by fraud, or where a party has possessed himself, improperly, of something, by means of which he has an unconscientious advantage at law, which equity will either put out of the way, or restrain him from using : but without circumstances of that kind, *I do not know*," says Lord *Redesdale*, " *that equity ever does interfere, to grant a trial of a matter which has already been discussed in a court of law, a matter capable of being discussed there, and over which the court of law had full jurisdiction.*" But, upon the principles of the present bill, application might be made to this court, in most cases, where a motion for a new trial had been denied in a court of law.

The settled doctrine of the *English* chancery is, not to relieve against a judgment at law, on the ground of its being contrary to equity, unless the defendant below was ignorant of the fact in question pending the suit, or it could not have been received as a defence ; (*Williams* v. *Lee*, 3 *Atk.* 223. ;) this was also the doctrine of the court of errors, in the case of *Le Guen* v. *Gouverneur & Kemble*, (1 *Johns. Cas.* 436.)

This case is one of the strongest, against the interference of this court, that could well be presented, for the party is not seeking relief against any *laches*, or mistake, or fraud ; but he is seeking for a review of his case, after failing in a voluntary application to the equitable powers of the mayor's court, on the very point now submitted, and after that application had been received, heard and denied. If this fresh attempt could be sustained, there would be no equality of right between the parties. The remedy would not be reciprocal, for if the set-off had been allowed in the mayor's

court, it will not be contended that the defendant could have been relieved here against it. The principle that a matter, once considered and decided by a competent power, shall not be reviewed by any other tribunal having concurrent power, except in the regular course of error or appeal, does not rest upon the mere technical form of the decision. That would be too narrow a ground; decisions in the case of new trials do not appear upon record, and they are also decisions resting in sound discretion. It is the unfitness, and vexation, and indecorum, of permitting a party to go on successively, by way of experiment, from one concurrent tribunal to another, and thus to introduce conflicting decisions, that prevents the second inquiry; and it ought to be observed, as an answer to much of what was said against the incompetency of the courts of common pleas over such questions, that if this mode of review was to prevail, it would apply as well to the case of an unsuccessful application to the supreme court, as to any of the courts below it.

The motion to dissolve the injunction is, accordingly, granted.