## Brown *v.* Warren.

The assent of creditors will not be presumed to an assignment by a debtor under the statute where the trust is accepted by the assignee with the condition that he shall be responsible only for his actual receipts and willful defaults.

In a suit at law the defendant can not offset any thing to the plaintiff's claim, except mutual demands, and to be mutual, the demands on each side must be due to and from the same persons in the same capacity.

Nor can joint and separate or several demands be offset against each other in suits or proceedings in equity any more than at law. The same rule in relation to set-off applies in the one case as in the other.

So an officer under our statute can set off executions in his hands only when the creditor in one is the debtor in the other in the same right and capacity.

But courts, either of law or of equity, at common law have the power, and where equitable will exercise it, to order the set-off of judgments where the claims on which the judgments are founded are not mutual.

Under the trustee process the trustee may set off, against what he owes the principal debtor, any demand which he might set off in any of the modes allowed either by statute or the common law, in any course of proceedings.

Therefore when two trustees are indebted to the principal defendant jointly, they may, under this process, offset not only their joint claim, but the several claims which each trustee may have against such debtor, and they will only be chargeable for the balance in their hands after deducting all their joint and several claims against the principal defendant.

Where property is pledged as security for a debt or liability, it is immaterial whether the pledgee holds the property or a third person holds it for him.

If property of A be held by B and C jointly, A may assign the same in pledge to B or C, severally, and the pledge will be good, if both B and C have knowledge of the same, and assent to hold the property for the pledgee.

Where property of A is already in the possession of B, for other purposes, it may be pledged by A to B to secure a particular debt or liability, and in such case no change of possession is necessary.

Foreign Attachment. The trustees having disclosed, the plaintiff elected to try their liability by the jury. The trustees were at first summoned severally, but after they had disclosed, the writ was amended so as to hold them jointly and severally.

It was agreed that on the 5th of February, A. D. 1852, the principal defendant executed to the trustees an assignment, a copy of which follows, marked "A." Immediately thereupon the trustees took possession of all the property assigned, as set forth in their disclosure, and they still remain in the possession of it, and its avails and proceeds; and as such assignees they collected the accounts, notes and demands of the principal defendant, as they have disclosed, and so advertised and sold said property. One of such sales they advertised on the 21st of January, 1856, as appears by the paper following, marked "B;" and as assignees they called a meeting of the creditors of the principal defendant, according to the notice, a copy of which follows, marked "B." On said 12th day of February the plaintiff appeared and stated about the amount of his demand against the principal defendant, but did not, on that occasion, present it to the assignees, or any evidence of it; and on the same day, after an adjournment of said meeting to the next day, he commenced this suit, and caused said Benjamin S. Warren and James Drew to be summoned as trustees; that on the 4th of March, 1852, and on the 8th of the same March, the principal

defendant executed the instruments, copies of which follow,· marked "C" and "D;" that neither at the execution of said last two instruments, nor since, was there or has there been any actual change or transfer of the property; that before said 5th day of February the principal defendant was, and is still indebted to the plaintiff, upon the causes of action set forth in his declaration.

The disclosures were made part of the case.

A.

"Know all men by these presents, that I, Orran P. Warren, of Pittsfield, in the county of Merrimack and State of New-Hampshire, physician, in consideration of one dollar to me paid by Benjamin S. Warren, of Concord, in said county, and James Drew, of said Pittsfield, and of the trusts herein expressed, do grant and assign to said Benjamin S. and James all my property and estate, rights and credits of every description, except as is by law exempt from attachment and execution.

To have and to hold the same to the said Benjamin S. and James and their heirs in trust to sell and dispose of said property to the best advantage, and collect and convert into money all my debts, accounts and demands; and, after deducting from the proceeds of said property the expenses incurred by the said Benjamin S. and said James, in transacting the business, and a reasonable compensation for their services, to divide and pay the said proceeds among all the creditors of the said Orran P. Warren, in equal proportions to their respective claims. The said Benjamin S. Warren and the said James Drew agree to execute said trust, being responsible only for their actual receipts and willful default.

The creditors, whose names are subscribed, agree to said assignment, and that this instrument shall be a release in full of all their claims whenever their just proportion of the proceeds of said property shall be paid.

Witness our hands and seals this 5th day of February, 1852.

|  |  |
|---|---|
| ORRAN P. WARREN. | [Seal.] |
| B. S. WARREN. | [Seal.] |
| JAMES DREW. | [Seal.] |

Signed, sealed and delivered
in presence of us,
    GEO. W. HALSTEAD,
    S. SMITH,
    L. F. ANDREWS."

The assignment was duly acknowledged, sworn to and recorded.

B.

"ASSIGNEES' NOTICE.

The undersigned, assignees of the property of Orran P. Warren, formerly of Pittsfield, physician, hereby request the creditors of said Warren to present their demands against him to either of the subscribers, on or before the 12th day of February next; on which day, at ten of the clock in the forenoon, we shall be at the office of

A. Wares, Jr., in Pittsfield, for the purpose of adjusting the same and making a dividend.

Also, at the same time and place, we shall sell at public auction the personal property of said Warren, now in our hands, consisting, in part, of notes and accounts.

JAMES DREW, }<br>B. S. WARREN, } *Assignees.*

Pittsfield, January 21, 1856."

C.

"In consideration of one dollar I hereby sell and convey to Benjamin S. Warren all my interest in all the goods and chattels, rights and credits, described in the schedule annexed, the same being now in the possession of the said Benjamin S. Warren and James Drew, under an assignment from me, with the provision that, in case said assignment shall prove to be invalid, the entire property in *said goods, chattels, rights* and credits shall pass to said Benjamin S. Warren, and be subject to this pledge :

To have and to hold the same in pledge, and as collateral security for the liability of the said Benjamin S. Warren as my surety, upon three promissory notes, signed by myself, and the said Benjamin as my surety, and payable to David Dow, for about three hundred dollars ; one payable to T. D. M. Lock, dated March, 1849, for two hundred dollars and interest ; one for about three hundred dollars, given to John Smith, of Pittsfield, on account of his ward, Simeon Sanger, and also as security against his liability on a note signed by Levi Warren, myself, A. K. Warren, and the said Benjamin, given for the joint benefit of all the makers ; this pledge to be void on the discharge of the liability of the said Benjamin upon the claims aforesaid by me.

Dated March 4, 1852.

In presence of H. A. Bellows.                ORRAN P. WARREN."

The schedule annexed to this pledge contained all the property assigned, except the debts and real estate.

D.

"In consideration of one dollar I hereby sell and convey to James Drew all my remaining interest in all the goods and chattels, rights and credits described in schedules annexed to a conveyance of said goods and chattels, rights and credits, as collateral security to B. S. Warren, for the payment of certain notes ; provided there shall remain any part thereof after the discharge in full of said B. S. Warren's liabilities, as described in said conveyance ; said goods, chattels, rights and credits being now in the possession of said B. S. Warren and said James Drew, under an assignment from me ; with the provision that, in case said assignment shall prove to be invalid, and also in case B. S. Warren shall be released from his liability, as described in said aforesaid conveyance, the entire property in said goods, chattels, rights and credits, shall pass to said James Drew, and be subject to this pledge :

To have and to hold the same in pledge and as collateral security for the liability of said Drew as my security as bail on a certain

suit between Jacob Perkins and myself; also, for any services rendered or money expended, or which may be rendered or expended in said suit, and also for any expenses which he has been or may be put to in collecting, selling, and converting the aforesaid goods, chattels, rights and credits into money, and for any expenses which he has or may incur by any suits which have been or may be brought against or respecting the aforesaid goods, chattels, rights and credits, this pledge to be void on discharge of the aforesaid liabilities of James Drew, and payment of the aforesaid expenditures.

Dated March 8, 1852.

In presence of Joseph T. Clough.

ORRAN P. WARREN."

Judgment was to be entered according to the opinion of the court, either party reserving the right of trial by jury, and the questions of law were reserved.

*Leavitt*, and *Bartlett*, for the plaintiff.

*Kittredge*, and *George & Foster*, for the trustees.

SARGENT, J.* The trustees in this case, as assignees under the assignment, agree to execute said trust, being responsible only for their actual receipts and willful defaults. To an assignment with such a condition on the part of the assignee, the assent of creditors is never to be presumed. No one in such case will be presumed to assent, except those who are proved to have thus assented. *Spinney* v. *Hosiery Co.*, 25 N. H. 9. It becomes unnecessary, therefore, to consider whether the last clause in relation to the creditors signing, &c., affects the assignment, or whether, as in *Fellows* v. *Greenleaf*, 43 N. H. 420, it might be rejected as surplusage, if the assignment was good in other particulars.

The assent of creditors in this case not being presumed, and there being no proof that any one assented, and it appearing from the disclosure of the trustees that the defendant was not at the time of the assignment owing either of them any thing, the assignment must be held to be void, and the assignees hold the property, whatever came to their possession in trust for the benefit of the debtor (*Spinney* v. *Hosiery Co.*); and hence the whole amount would be held in their hands by any person who should have summoned them as trustees of the debtor, before any claim arose on the part of the trustees against him.

But when this writ was made and served, it appears, by the disclosure, that there had been received by the trustees, as the avails of the property assigned to them, $1,235.77, that out of this they had paid $327.87, leaving in their hands a balance of $907.90, beside some notes, accounts, and other property, which they had been unable to collect or dispose of. See schedule F, annexed to Drew's disclosure. And it also appears that prior to the date of

BELLOWS, J., and BARTLETT, J., did not sit.

this writ, Drew's claim for services and expenses was, as he claimed, $147.03, in taking care and disposing of the property assigned, and collecting debts, and B. S. Warren's claim for similar services and expenses was $114.13. It also appears by the disclosures, that Drew had a private account against the defendant of $35.23, and B. S. Warren a private account of $147.42, both of which had accrued since the assignment and before the date of this writ, growing out of transactions not connected with the assignment; also, that as such assignees they had employed counsel in various suits, and had paid and were responsible to pay $116 for such services as assignees.

Now it appears that when these claims, which they claim as assignees, are deducted from the $907.90 in their hands, it leaves but $530.74. It also appears, in the disclosures, that B. S. Warren had paid, as surety for the defendant, after the assignment, on debts upon which he was liable before the assignment, the sum of $430.52 (including interest to October 20, 1857), and all but $10 of it was paid before the date of this writ, and that was paid soon after, in April, 1856, and deducting interest on the money paid, $66.02, it leaves $364.50, money paid out, which, added to the amount of their private accounts, makes $546.67, which the trustees claim to offset to the $530.74 left in their hands after deducting what they claimed as trustees. It also appears that B. S. Warren is still held for $577.88 as surety for the defendant on notes signed before this suit was commenced.

The plaintiff can not have hoped to charge the trustees before the jury for a larger amount than they disclose, on the ground that they had been negligent and had not collected as much on this property assigned to them as they might have done with proper care and diligence, because he will see that the condition upon which the assignees accepted the trust, although it was such that the assent of creditors could not be presumed, yet it was assented to by the debtor, and upon this condition the property passed from his hands to the assignees. The defendant is, therefore, bound by this arrangement, and the trustees can not be charged for more in this case than what the defendant would have a right to claim of them. The assignment having been made and accepted, with the provision that the assignees' services and expenses were to be first deducted from the amount realized by them on the property, the debtor who thus assigned to them on that express condition, can not now be heard to object to that allowance, if it is reasonable, and if he could not object, those who seek to acquire his rights can not, and there is no proof or any suggestion that the services have not been rendered and the expenses paid, as charged, nor that the amounts charged are not fair and reasonable.

The trustees disclose that they held this money and property jointly. They were, at first, summoned severally, as trustees, and that was the position in which they stood at the time they made their disclosures, and they state that they hold nothing severally, but that as the assignment was joint, so they have held all the property they received jointly and not severally. The writ has since

been amended by leave of court so as to hold the trustees either jointly or severally. But upon their disclosure they must be charged jointly, if at all. No objection is made that so much of their claim as can be considered a joint claim against the debtor may be offset on this proceeding. But the principal question is, can the trustees set off their several claims against the debtor in this suit? If they can not do so, it leaves a balance in the hands of the trustees for this plaintiff, unless the pledges shall otherwise dispose of it. But if they can do so they must be discharged without regard to the pledges, unless the plaintiff shall think there is some of the property in their hands not disposed of, or some claim not collected, which would be available to him, which would probably be doubtful after this lapse of time. Under the assignment, B. S. Warren could not claim to have his liability as surety upon notes for the debtor offset against the money or property in his hands, where he had not actually paid the money before judgment in this suit.

The plaintiff takes the position that the trustees in this case can not offset any thing against their liability to the debtor but their joint claims against him, which would leave the trustees chargeable for $530.74. And the plaintiff insists that the same rule applies in this case that would apply between the debtor and the trustees, had the former brought his suit at law against the latter to recover the property that had passed into their hands. Now if the plaintiff is correct in this last position, it follows that he is so in the first, for there is no question that in an action at law between the debtor and the trustees, on a claim against them jointly, the several debt of either can not be offset.

By our statute, in order to be entitled to offset, the debts must be mutual. Rev. Stat., ch. 187, secs. 4, 5; Comp. Laws 483. And to be mutual they must be due to and from the same persons in the same capacity. Joint and separate debts can not be thus set-off against each other in suits at law. *Woods* v. *Carlisle*, 6 N. H. 27; *Hutchins* v. *Riddle*, 12 N. H. 274. In assumpsit against two, their several claims against the plaintiff can not be set off to his demand against them. *Ross* v. *Knight*, 4 N. H. 236. A joint debt can not be set off against a separate demand, nor a separate debt against a joint demand, where the statute authorizes mutual demands only to be set off. *Palmer* v. *Green*, 6 Conn. 19; *Pitkin* v. *Pitkin*, 8 Conn. 325; *Sherman* v. *Crosby*, 11 Johns. 70; *Lyle* v. *Closon*, 1 Caines 323.

Nor can joint and separate debts be set off against each other in suits in equity any more than at law, but there too they must exist between the same parties in their own right and be clearly ascertained and liquidated. *Duncan* v. *Lyon*, 3 Johns. Ch. 351; *Dale* v. *Cook*, 4 Johns. Ch. 11; *Whitaker* v. *Bush*, Amb. 407; *Ex parte Twogood*, 11 Ves. 517; *Ex parte Hanson*, 12 Ves. 346, S. C. 18 Ves. 232; *Addes* v. *Knight*, 2 Merivale 117; *Palmer* v. *Green*, 6 Conn. 19; *Mahurin* v. *Pearson*, 8 N. H. 539. Of course these cases all refer to the setting off of debts or demands in suits at law or in equity, and have nothing to do with setting off judgments, which stands entirely upon different ground.

We are aware that it has been held that where the plaintiff sues two upon a note, one of whom is surety for the other, a note from the plaintiff to the principal may be offset by the principal. *Woods* v. *Carlisle*, 6 N. H. 27 ; *Mahurin* v. *Pearson*, 8 N. H. 539 ; *Ex parte Hanson*, 12 Ves. 346, 18 Ves. 232. In the last case the plaintiffs had sued H upon a joint bond, in which he was principal and one W his surety, and he was allowed to set off a debt which the plaintiffs owed him alone ; but this was not intended or considered as a departure from the rule already stated, but is put by Ld. *Eldon* in the opinion upon the ground that the joint debt was nothing more in such a case than a security for a separate debt.

But the plaintiff is incorrect in his other position that the trustees in this process can offset against the amount they owe the debtor, only the same claims and demands which they could have done in a suit at law, had the debtor sued them jointly to recover this property. In *Hathaway* v. *Russell*, 16 Mass. 473, the question arose which arises here, only in a more complicated form, and although *Jackson*, J., there assumes (p. 475) that the right of set-off, where a part only of the debtors on the one side are creditors on the other, though formerly doubted, is now well established in courts both of law and equity, which assumption is entirely erroneous, as we have seen ; and though he cites as authorities three English cases (1 Atk. 100 ; 3 Ves. Jr. 248 ; 4 D. & E. 123), none of which fully sustains his position, and so far as any of them do sustain it, they have been overruled both in England and in this country (*Addes* v. *Knight*, 2 Merivale 121 ; 4 Johns. Ch. 14), still he does not attempt to place the decision of that case upon his assumed principle, but says, "The right in the case at bar does not depend on any statute provisions, but arises from the nature of the suit into which the trustee is thus incidentally introduced as a party. In this suit he is called upon to answer for all the goods, effects and credits of the principal in his hands, without regard to the nature of the demands, or to the form of action in which they would be recoverable by the principal, and even if they should be of several different kinds, requiring different forms of action ; on the other hand he is to be allowed all his demands against the principal, of which he could avail himself in any form of action, or any mode of proceeding between himself and his principal, whether by way of set-off on the trial, as provided by our statutes, or by setting off the judgments under an order of court, or by setting off the executions in the hands of the sheriff, as it is provided by the statute. If this were not so, the trustee would be injured by having his claims thus drawn in to be settled incidentally in a suit between strangers." Unliquidated damages for mere torts, of course would be excepted. He afterward adds, "In this suit a demand is made upon the trustee without any regard to technical forms, to pay whatever effects of the principal he may have in his hands, and these effects are only what remain after deducting all that he could retain or set-off in any lawful mode of adjustment between himself and the principal without regard on his part to mere technical forms." And he holds that though there might be technical objections to

making the set-off in cross actions, yet that no such objections apply in that case.

The same principle is followed in *Boston Foundery Company* v. *Mortimer*, 7 Pick. 166; and in *Smith* v. *Stearns*, 19 Pick. 20, in which *Shaw*, C. J., in delivering the opinion, says, "It is clearly held, as the construction of the trustee process, that where one is chargeable in consequence of being the debtor of the principal, the question will be, whether he holds any balance upon a liquidation of all demands. In striking such balance he has a right to set off, from the debt which he acknowledges he owes the principal, any demand which he might set off in any of the modes allowed by statute or the common law, or in any course of proceeding."

The same construction has been given to the statute authorizing the use of the trustee process in this State. *Boardman* v. *Cushing*, 12 N. H. 118; *Swamscott Machine Co.* v. *Partridge*, 25 N. H. 374.

Such being the principle upon which we are to proceed, let us see its application to the present case. We have seen that if the debtor had sued the trustees jointly, they could not have set off any but joint claims under our statute, as no others would be mutual claims. Nor would it make the case any different if all these claims on each side had passed into execution, and they had been placed in the hands of an officer for collection, for our statute only authorizes executions in which the creditor in one is debtor in the other in the same right and capacity, to be offset by the officer. Rev. Stat., ch. 194, sec. 1; Comp. Laws 498.

But suppose all the claims on both sides had passed into judgment, and an application were made to the court to offset the separate and several judgments of these trustees against the judgment which the debtor had recovered against them jointly, the court, whether of law or equity, have at common law that power, and may order the offset. The exercise of this power does not depend upon any statute, but is exercised by courts of law as well as equity, upon the application of either party, under the general power which courts have at common law over the suitors in them. The practice of setting off one judgment against another in court, is not confined to judgments founded on mutual debts. *Chandler* v. *Drew*, 6 N. H. 469; *Shapley* v. *Bellows*, 4 N. H. 351, and cases cited; *Goodenow* v. *Buttrick*, 7 Mass. 144; *Hutchins* v. *Riddle*, 12 N. H. 454, in which it was held that though the claims between the parties were not mutual so that they could be set off in a suit, yet when they had both passed into judgment the court might set off one judgment against the other if equity required it. And a judgment recovered by A against B and C may be set off against a judgment recovered by B against A. *Simpson* v. *Hart*, 14 Johns. 63, and S. C. 1 Johns. Ch. 91; *Wright* v. *Cobleigh*, 23 N. H. 32; *Allen* v. *Hall*, 5 Met. 263, where it is said that the trustee shall have the benefit of a set-off, legal or equitable, in his own right, or in the right of those with whom he is privy, and in whose favor the debt claimed to be due from the trustee could in his hands be made available by way of set-off, in any of the modes provided by law.

We do not overlook the case of *French* v. *Lovejoy*, 12 N. H. 458, where it is held that if a trustee have a debt against a firm, and also against one of the individual members of the firm, and' he have money of the firm in his hands which he is authorized to appropriate for the payment of his debt against the firm, he may retain, when sued by a creditor of the firm, enough to pay that debt, but not to pay his debt. against the individual partner; and with reason, because to allow him to appropriate the funds of the firm to pay his debt against an individual partner, where he was sued by a creditor of the firm, would be to hold that the funds of the firm might be taken to pay the private debt of one partner in preference to paying the debt of the firm. Nor would any court allow a set-off of judgments in such a case for the same reason. But no such reason exists in case of debts due to and from individuals jointly. That decision rests upon the distinct and well recognized principle that partnership property must first go to pay the debts of the firm, before it will be applied in payment of the individual debts of a partner, and has no application to the case before us.

Upon the authorities, therefore, the set-off claimed by these trustees of their private claims against the debtor's claim upon them jointly, may be offset in this proceeding under the trustee process, if such offset would be equitable; and the whole evidence in the case certainly tends to show that the principal debtor is insolvent, which would be all that would need to be shown in any court to warrant an order for the set-off of judgments in such a case. Making all these deductions and it disposes of all the money in the trustees' hands, and leaves only the property and claims which they have not been able to make available. The disposition of these must depend upon the fact whether or not the pledges in this case were valid. It appears from the disclosures of the trustees, and from the assignments in pledge, that the one to Warren was made March 4, and the one to Drew March 8. It does not distinctly appear that Drew knew of and assented to the one made to Warren at the time it was made, though we should infer that such was the fact; but however that may be, he knew all about it and assented to it at the time he took the one to himself, upon the same property four days after, which is expressly made subject to the other, and from that time at least the pledges were valid and binding. It can make no difference if the property is not in the hands of the pledgor, whether it be in the hands of the pledgee or of a third person who has known and assented to the pledge, and who thus holds the property for the pledgee; nor can it be material that the property he held by one alone, or by two jointly as in this case, provided they both assent to hold the property for the pledgee, and they could as well and as properly thus jointly hold the property for one of their own number who was the pledgee as for a stranger. In *Macomber* v. *Parker*, 14 Pick. 497, and *Danforth* v. *Denney*, 25 N. H. 155, where it is held that the pledge of property to Blanchard, the trustee, to pay his own debt first, and then the debts of several other creditors, was

a good pledge for all such creditors, and gave them all a lien upon the property, having agreed and assented to the terms of the pledge.

Nor was there any impropriety in taking the pledges while the assignment was in force and before it had been decided to be invalid. If the assignment was good the property would go for the benefit of all the creditors alike; if not, then the debtor had the legal right to prefer some creditors to others and give them a mortgage, or give them the property to hold in pledge till their debt was paid. There is no evidence or intimation of fraud in the transaction, even as against existing creditors. Warren's liability as surety for the debtor was near $600, incurred before the pledge, and to secure which the pledge was given, which will dispose of all the property, and much more, if there was more.

*Trustees discharged.*